- 19 -

It shall not be necessary in making proof of this Agreement or any counterpart hereof to produce or account for any of the other counterparts. Execution and delivery of counterparts of this Agreement by telecopier by any party shall be binding on all parties to this Agreement.

**IN WITNESS WHEREOF,** the parties hereto have duly executed this Agreement on the date first written.

**MULTI-GLASS INTERNATIONAL CORP.**

Per: _____

Name: William G. Edwards

Title:    Vice-President, Finance                    (c/s)

**REFRACTORY AND INSULATION SUPPLY CORP.**

Per: _____

Name: DANIEL T. SCHNELLER

Title: PRESIDENT                    (c/s)

_____

**WITNESS**

_____

**JEFF CANTWELL**

::ODMA\PCDOCS\GV\140733\1

**EXHIBIT 1.3(a)**
**EXCLUDED ASSETS**

1.      Refer to Excluded Accounts Receivable Exhibit 1.3(a) *attached.*

2.      Cash - chequeing summit - ($296.00)

3.      PNC Bank - chequeing - $136,957.00

4.      Employee Loans - $57,423.00

5.      Prepaid Taxes - Corp. N.J. - $463.00

6.      Petty Cash - $750.00

# Exhibit "C"

## HOLDBACK, EARN OUT ESCROW AGREEMENT

This Escrow Agreement (the "**Escrow Agreement**") is made and entered into on the _17TH_ day of February, 2000 among **MULTI-GLASS INTERNATIONAL CORP.** a Delaware corporation (the "**Buyer**"), a wholly-owned subsidiary of **MULTI-GLASS INTERNATIONAL INC.**, an Alberta corporation ("**Multi-Glass**"), **REFRACTORY AND INSULATION SUPPLY CORP.**, a New Jersey corporation (the "**Vendor**"), **JEFF CANTWELL**, an individual resident in New Jersey ("**Cantwell**") and **PEPPER HAMILTON LLP**, Pennsylvania attorneys for the Vendor and Cantwell (the "**Escrow Agent**").

### BACKGROUND

The Buyer, the Vendor and Cantwell are parties to an asset purchase agreement entered into on the _17TH_ day of February, 2000 (the "**Purchase Agreement**") providing for the purchase by the Buyer of certain of the assets of the Vendor. Capitalized terms used herein shall have the same meanings as ascribed in the Purchase Agreement unless otherwise defined herein. Pursuant to Exhibit 2.2 of the Purchase Agreement, on the Closing Date, the Buyer is required to deposit the sum of $150,000.00 (the "**Escrow Property**") with the Escrow Agent. The Buyer, the Vendor and Cantwell agree that the Escrow Agent shall hold the Escrow Property pursuant to the Purchase Agreement on and subject to the terms hereof. For greater certainty, the Escrow Property shall be comprised of the Holdback Amount and the Earn Out Amount.

### TERMS AND CONDITIONS

1.  **Escrow Agent Appointment and Acceptance**

    (a)   Subject to the provisions hereof, the Buyer, the Vendor and Cantwell hereby appoint the Escrow Agent as their agent and custodian to hold, invest and disburse the Escrow Property in accordance with the terms of this Escrow Agreement, and the Escrow Agent accepts such appointment, acknowledges receipt of the Escrow Property from the Buyer and agrees to hold and release the Escrow Property only in accordance with the terms hereof.

    (b)   Notwithstanding anything to the contrary set forth herein, the duties and obligations of the Escrow Agent will be determined solely by this Escrow Agreement and any subsequent amendments or supplemental instructions agreed to in writing as provided below. Except as otherwise expressly provided herein, the Escrow Agent shall not refer to, and shall not be bound by, the provisions of any other agreement.

    (c)   The Escrow Agent shall not in any way be bound or affected by any modification or cancellation of this Escrow Agreement unless notice thereof is jointly given, in writing, to the Escrow Agent by the Buyer, the Vendor and Cantwell. The obligations of the Escrow Agent shall not be modified unless the Escrow Agent has consented to the modification in writing, which consent shall not be unreasonably withheld.



(d)    Upon termination of this Escrow Agreement, the Escrow Agent may request from any and all of the parties hereto such additional assurances, certificates, satisfactions, releases and/or other documents as it may reasonably deem appropriate to evidence the termination of this Escrow Agreement.

2.    **Release from Escrow**  Except as may be otherwise provided in this Escrow Agreement, the Escrow Agent will release the Escrow Property only:

(a)    in accordance with the mutual written direction of the Buyer, the Vendor and Cantwell upon satisfaction of the provisions of Exhibit 2.2 of the Purchase Agreement, or

(b)    in accordance with the final and unappealable order or direction of a court of competent jurisdiction or applicable regulatory authority.

3.    **Termination**  This Escrow Agreement shall be terminated upon payment by the Escrow Agent, in accordance with the terms hereof, of the Escrow Property to the Vendor or the Buyer in accordance with Exhibit 2.2 of the Purchase Agreement, as the case may be.

4.    **Investment of Escrow Property**

(a)    The Escrow Agent shall invest and reinvest the Escrow Property in an interest-bearing account. The Escrow Agent shall have the right to liquidate any investments of Escrow Property to provide funds necessary to make required payments under this Agreement. The Escrow Property shall remain invested as provided herein until distributed and paid pursuant to the terms and conditions of this Escrow Agreement.

(b)    All investments of the Escrow Property shall be held by, or registered in the name of, the Escrow Agent or its nominee.

(c)    The Vendor shall be deemed to be the owner of the Escrow Property for tax purposes. Interest earned on the Escrow Property for each taxable period shall be deemed to be earned by the Vendor and shall be disbursed to the Vendor upon termination of this Escrow Agreement. The Vendor represents that its federal tax identification number is 22-2402929. All interest earned on the Escrow Property under this Escrow Agreement shall be reported by the Vendor to the Internal Revenue Service. The Escrow Agent shall have no responsibility for the payment of taxes arising from or related to the Escrow Property.

(d)    The Escrow Agent shall not be required to institute or defend any action involving any matters referred to herein or which affect it or its duties or liabilities hereunder, unless or until requested to do so by any party to this Escrow Agreement and then only upon receiving full indemnity, in a character reasonably satisfactory to the Escrow Agent, against any and all claims, liabilities and expenses, including the reasonable attorneys fees, in relation thereto.



5.    **Compensation of Escrow Agent**  The Escrow Agent shall not charge or impose any fee for serving as the Escrow Agent hereunder or for performing the services set forth herein.  The provisions of this Section shall survive the termination of this Escrow Agreement.

6.    **Resignation and Removal of Escrow Agent**  The Escrow Agent may resign at any time and for any reason upon notice to the Buyer, the Vendor and Cantwell given at least 30 days prior to the effective date of such resignation.  The Escrow Agent may be removed by the mutual consent of the Buyer, the Vendor and Cantwell upon 30 days' prior written notice to it.  If the Escrow Agent resigns or is removed and the Buyer, the Vendor and Cantwell fail to agree on a successor Escrow Agent within 20 days after receiving notice of such resignation or removal, the Buyer shall have the right to appoint a successor Escrow Agent, which shall be a commercial bank or trust company authorized to do business in the Commonwealth of Pennsylvania.  Any successor Escrow Agent shall execute and deliver to the predecessor Escrow Agent, the Buyer, the Vendor and Cantwell an instrument accepting such appointment, and thereupon such successor Escrow Agent shall, without further act, become vested with all rights, powers and duties of the predecessor Escrow Agent as if originally named as the Escrow Agent and shall be bound by this Agreement.  If a successor Escrow Agent has not been appointed within 30 days after any notice of resignation or removal, the Escrow Agent may deliver all of the cash and other property in its possession under this Escrow Agreement to any court of competent jurisdiction in the Commonwealth of Pennsylvania.  Upon such delivery or upon the delivery of such cash and other property to any successor Escrow Agent appointed as provided above, the Escrow Agent shall be released from any and all liability under this Escrow Agreement, except to the extent of any prior willful misconduct, willful default or gross negligence of the Escrow Agent.

7.    **Liability of Escrow Agent; Expenses**

    (a)    In performing any of its duties under this Escrow Agreement, the Escrow Agent shall:

        (i)    not incur any liability to anyone for damages, losses or expenses, except for its own willful misconduct, willful default or negligence;

        (ii)    not incur any liability for any action that is taken or omitted in good faith upon advice of its counsel given in writing regarding any question relating to the duties and responsibilities of the Escrow Agent under this Escrow Agreement;

        (iii)    be entitled to deem (unless it has actual knowledge to the contrary) the signatories of any documents or instruments submitted to it pursuant to this Escrow Agreement as being those of persons authorized to sign such documents or instruments on behalf of the other parties to this Escrow Agreement and shall be entitled to rely upon the genuineness of the signatures of such signatories without inquiry and without requiring substantiating evidence of any kind;

        (iv)    be entitled to rely upon any judgment, certification, demand or other writing delivered to it hereunder without being required to determine the authenticity or the correctness of any facts stated therein, the propriety or validity of the service thereof, or the jurisdiction issuing any judgment;

 

      (v)    have no liability for investment losses suffered by the Escrow Property so long as the investments were made in accordance with the terms of this Agreement; and

      (vi)    have no duties or responsibilities except those expressly set forth herein.

    (b)    If a dispute arises between any of the parties to this Escrow Agreement or if the Escrow Agent shall be uncertain as to its rights and duties under this Escrow Agreement, the Escrow Agent shall be entitled at its option to tender into the register or custody of any court of competent jurisdiction in or for the Commonwealth of Pennsylvania, all money or property in its hands under this Escrow Agreement and to begin such legal proceedings as it deems appropriate. After taking such actions, the Escrow Agent shall then be discharged from any further duties and liability under this Escrow Agreement except to the extent of any prior willful misconduct, willful default or gross negligence of the Escrow Agent. Any such legal action may be brought in any court in or for the Commonwealth of Pennsylvania that has the appropriate jurisdiction.

    (c)    The Buyer, the Vendor and Cantwell hereby agree to indemnify, defend and hold harmless the Escrow Agent against, from and in respect of (i) any claim, damage or deficiency, of any type whatsoever, relating to this Escrow Agreement or arising out of or in any other manner stemming or resulting from its administration, in good faith, of the Escrow Property (other than the gross negligence, willful misconduct or willful default of the Escrow Agent), and (ii) all actions, suits, proceedings, claims, demands, assessments, judgments, costs and expenses (including, without limitation, reasonable legal fees incident to any conflicting claims by Cantwell or the Vendor and the Buyer or any claim against the Escrow Agent) incident to any of the foregoing. This indemnity shall survive the resignation or removal of the Escrow Agent and the termination of the trusts hereunder. Anything in this Agreement to the contrary notwithstanding, in no event shall the Escrow Agent be liable for special, indirect or consequential loss or damage of any kind whatsoever (including but not limited to lost profits), even if the Escrow Agent has been advised of the likelihood of such loss or damage and regardless of the form of action.

8.    **Parties in Interest; Assignment**  Subject to the following two sentences, this Escrow Agreement shall enure to the benefit of and be binding on the parties and their respective successors and permitted assigns. Except when expressly permitted by this Escrow Agreement, any assignment of this Escrow Agreement by any party without prior written consent of the other parties shall be void. Nothing in this Escrow Agreement is intended to confer any rights or remedies on anyone other than a party to this Escrow Agreement or the holder of a valid assignment of rights under this Escrow Agreement.

9.    **Governing Law**  This Escrow Agreement shall be governed by and interpreted and enforced in accordance with the laws of the Commonwealth of Pennsylvania without regard to conflicts of laws principles of any jurisdiction.  Each of the Buyer, the Vendor, Cantwell and the Escrow Agent irrevocably and unconditionally (a) agree that any suit, action or other legal proceeding (collectively, the "Suit") instituted by the Vendor or Cantwell and arising out of this Escrow Agreement shall be brought and adjudicated only in the Commonwealth of Pennsylvania, (b) agrees that any Suit instituted by the Buyer arising out of this Escrow Agreement shall be brought and adjudicated only in the Commonwealth of Pennsylvania, and (c) waive and agree not to assert by way of motion, as a defence or otherwise in any such Suit, any claim that it is not subject to the jurisdiction of the above courts, that such Suit is brought in an inconvenient forum or that the venue of such Suit is improper.

10.    **Amendments or Supplements to Escrow Agreement**  This Escrow Agreement may not be amended or supplemented except by written instrument duly executed by each party.

11.    **Notices**  Any notice, request, claim, demand, waiver, consent, approval or other communication which is required or permitted hereunder shall be in writing and shall be deemed given if delivered personally or sent by facsimile, as follows:

   If to the Vendor, Cantwell or the Buyer, in accordance with the notice provisions (including required copies) set forth in the Purchase Agreement.

   If to the Escrow Agent, to:

   1235 Westlakes Drive, Suite 400
   Berwyn, Pennsylvania
   U.S.A.  19312
   Attention: Cuyler Walker
   Telecopier: (610) 640-7835
   Telephone: (610) 640-7823

Such notice, request, claim, demand, waiver, consent, approval or other communication shall be deemed to have been given as of the date so delivered or facsimiled.

12.    **Counterparts; Telecopier Execution**  This Escrow Agreement may be executed in any number of counterparts, each of which is an original, and all of which together shall be deemed to be one and the same instrument.  Execution and delivery of counterparts of this Escrow Agreement by telecopier by any party shall be binding on all parties to this Escrow Agreement.

13.    **Other Documents**.  The parties hereto agree to execute and deliver any and all documents and to take such further action as shall be reasonably required to effectuate the provisions of this Escrow Agreement.

14.    **Rights to Escrow Property**.  None of the Buyer, the Vendor or Cantwell shall have any right, title or interest in or to the Escrow Property until (and then only to the extent that) the Escrow Property is distributed to the applicable party.  The parties hereto intend that, in the event of the filing of any petition

 

in bankruptcy by or against the Buyer, the Vendor or Cantwell, the bankruptcy estate of the Buyer, the Vendor or Cantwell, as the case may be, shall have no right, title or interest in or to the Escrow Property until (and then only to the extent that) the same is actually received by such party.

15.    The parties hereto understand and acknowledge that the Escrow Agent is legal counsel to the Vendor and Cantwell, and that said counsel may continue to act as such in the event of any dispute in connection with the Purchase Agreement, this Escrow Agreement or any other transaction contemplated therein or herein, subject to the obligations in Section 2 above.

**IN WITNESS WHEREOF** the parties have duly executed this Escrow Agreement on the date first written above.

**MULTI-GLASS INTERNATIONAL CORP.**

Per: _____
Name:   William G. Edwards
Title:    Vice-President, Finance            (c/s)

**REFRACTORY AND INSULATION SUPPLY CORP.**

Per: _____
Name:   Daniel Sonnelitter
Title:    President                              (c/s)

_____
**JEFF CANTWELL**

**PEPPER HAMILTON LLP**

Per: _____
Name:
Title:    Partner

**WITNESS** _____

# Exhibit "D"

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

KNAUF FIBER GLASS GMBH,                    :    CIVIL ACTION

        Plaintiff,                        :    NO. 99-5741

        v.                                :

REFRACTORY AND INSULATION SUPPLY CORP.     :
d/b/a RISCO,                               :

        Defendant.                        :

**FILED**

MICHAEL E. KUNZ, Clerk

By_____ Dep. Clerk

---

## STIPULATED JUDGMENT AGAINST DEFENDANT
## AND IN FAVOR OF PLAINTIFF

AND NOW, effective as of this 24th day of February, 2000, Plaintiff and Defendant hereby agree and stipulate that Defendant waives all defenses of any kind and nature to the causes of action set forth in the Complaint in the above-captioned matter, and that a judgment in the amount of Seven Hundred Eighty-Eight Thousand Seven Hundred Forty-Six dollars and Thirteen cents (US $788,746.13) is be entered in favor of Plaintiff, Knauf Fiber Glass GMBH, and against Defendant, Refractory and Insulation Supply Corp. d/b/a RISCO, in the above-captioned matter.

GRAVINO, VITTESE & JONES, LLP          ADELMAN LAVINE GOLD AND LEVIN,
                                        A Professional Corporation

By: _____           By: _____
Mark A. Vittese, Esquire              Barry D. Kleban, Esquire
23 Euclid Street                      Bradford J. Sandler, Esquire
P.O. Box 618                          1900 Two Penn Center Plaza
Woodbury, NJ 08096-7618               Philadelphia, PA 19102
856-845-1323                          215-568-7515
Attorney for Defendant,               Attorney for Plaintiff,
Refractory and Insulation             Knauf Fiber Glass, GMBH
Supply Corp. d/b/a RISCO

EXHIBIT
P-1
ALL-STATE® INTERNATIONAL

SO ORDERED on this _____ day of _____, 2000.

        BY THE COURT,

        _____, J.

d:\389\46\pleading\order1.doc

COPIES BY MAIL ON: 3/15/00

TO: M. Vittese  B. Sandler

# Exhibit "E"

# ASSIGNMENT

For good and valuable consideration, the receipt and sufficiency of which consideration is hereby acknowledged, and with the intent to be legally bound, POS Termination, Inc. f/k/a Refractory and Insulation Supply Corp. d/b/a Risco ("Risco"), by and through its undersigned officer, hereby assigns, transfers and conveys to Knauf, its successors and assigns (collectively hereinafter "Knauf"), all of its rights, title and interest in, to and under the Holdback, Earn Out Escrow Agreement (the "Escrow Agreement") dated February 17, 2000, by and among Multi-Glass International Corp., Risco, Cantwell and Pepper Hamilton, LLP, including, without limitation, all of its rights, title, and interest in and to any and all sums of money now due or to become due to it under the Escrow Agreement, a copy of which Escrow Agreement is attached hereto as Exhibit "A", and Knauf is hereby authorized to take all steps necessary to collect any and all sums of money due to it under the Escrow Agreement by virtue of this Assignment.

IN WITNESS WHEREOF, the undersigned officer, being authorized by Risco to do so, has duly executed this Assignment on behalf of Risco on this _24th_ day of June, _October_ 2001.

ATTEST                                    "RISCO"

By: _[signature]_    By: _[signature]_
   Name:                                 Jeffrey Cantwell, President
   Title:

Sworn or affirmed to and
acknowledged before me on
this _24th_ day of _Oct_, 2001.

_[signature]_
Notary Public

**PATRICIA K. VITTESE**
**NOTARY PUBLIC OF NEW JERSEY**
**My Commission Expires April 26, 2004**

# Exhibit "A"

## HOLDBACK, EARN OUT ESCROW AGREEMENT

This Escrow Agreement (the "**Escrow Agreement**") is made and entered into on the _17TH_ day of February, 2000 among **MULTI-GLASS INTERNATIONAL CORP.** a Delaware corporation (the "**Buyer**"), a wholly-owned subsidiary of **MULTI-GLASS INTERNATIONAL INC.**, an Alberta corporation ("**Multi-Glass**"), **REFRACTORY AND INSULATION SUPPLY CORP.**, a New Jersey corporation (the "**Vendor**"), **JEFF CANTWELL**, an individual resident in New Jersey ("**Cantwell**") and **PEPPER HAMILTON LLP**, Pennsylvania attorneys for the Vendor and Cantwell (the "**Escrow Agent**").

### BACKGROUND

The Buyer, the Vendor and Cantwell are parties to an asset purchase agreement entered into on the _17TH_ day of February, 2000 (the "**Purchase Agreement**") providing for the purchase by the Buyer of certain of the assets of the Vendor. Capitalized terms used herein shall have the same meanings as ascribed in the Purchase Agreement unless otherwise defined herein. Pursuant to Exhibit 2.2 of the Purchase Agreement, on the Closing Date, the Buyer is required to deposit the sum of $150,000.00 (the "**Escrow Property**") with the Escrow Agent. The Buyer, the Vendor and Cantwell agree that the Escrow Agent shall hold the Escrow Property pursuant to the Purchase Agreement on and subject to the terms hereof. For greater certainty, the Escrow Property shall be comprised of the Holdback Amount and the Earn Out Amount.

### TERMS AND CONDITIONS

1.    **Escrow Agent Appointment and Acceptance**

   (a)    Subject to the provisions hereof, the Buyer, the Vendor and Cantwell hereby appoint the Escrow Agent as their agent and custodian to hold, invest and disburse the Escrow Property in accordance with the terms of this Escrow Agreement, and the Escrow Agent accepts such appointment, acknowledges receipt of the Escrow Property from the Buyer and agrees to hold and release the Escrow Property only in accordance with the terms hereof.

   (b)    Notwithstanding anything to the contrary set forth herein, the duties and obligations of the Escrow Agent will be determined solely by this Escrow Agreement and any subsequent amendments or supplemental instructions agreed to in writing as provided below. Except as otherwise expressly provided herein, the Escrow Agent shall not refer to, and shall not be bound by, the provisions of any other agreement.

   (c)    The Escrow Agent shall not in any way be bound or affected by any modification or cancellation of this Escrow Agreement unless notice thereof is jointly given, in writing, to the Escrow Agent by the Buyer, the Vendor and Cantwell. The obligations of the Escrow Agent shall not be modified unless the Escrow Agent has consented to the modification in writing, which consent shall not be unreasonably withheld.



(d)    Upon termination of this Escrow Agreement, the Escrow Agent may request from any and all of the parties hereto such additional assurances, certificates, satisfactions, releases and/or other documents as it may reasonably deem appropriate to evidence the termination of this Escrow Agreement.

2.    **Release from Escrow**  Except as may be otherwise provided in this Escrow Agreement, the Escrow Agent will release the Escrow Property only:

(a)    in accordance with the mutual written direction of the Buyer, the Vendor and Cantwell upon satisfaction of the provisions of Exhibit 2.2 of the Purchase Agreement, or

(b)    in accordance with the final and unappealable order or direction of a court of competent jurisdiction or applicable regulatory authority.

3.    **Termination**  This Escrow Agreement shall be terminated upon payment by the Escrow Agent, in accordance with the terms hereof, of the Escrow Property to the Vendor or the Buyer in accordance with Exhibit 2.2 of the Purchase Agreement, as the case may be.

4.    **Investment of Escrow Property**

(a)    The Escrow Agent shall invest and reinvest the Escrow Property in an interest-bearing account. The Escrow Agent shall have the right to liquidate any investments of Escrow Property to provide funds necessary to make required payments under this Agreement. The Escrow Property shall remain invested as provided herein until distributed and paid pursuant to the terms and conditions of this Escrow Agreement.

(b)    All investments of the Escrow Property shall be held by, or registered in the name of, the Escrow Agent or its nominee.

(c)    The Vendor shall be deemed to be the owner of the Escrow Property for tax purposes. Interest earned on the Escrow Property for each taxable period shall be deemed to be earned by the Vendor and shall be disbursed to the Vendor upon termination of this Escrow Agreement. The Vendor represents that its federal tax identification number is 22-2402929. All interest earned on the Escrow Property under this Escrow Agreement shall be reported by the Vendor to the Internal Revenue Service. The Escrow Agent shall have no responsibility for the payment of taxes arising from or related to the Escrow Property.

(d)    The Escrow Agent shall not be required to institute or defend any action involving any matters referred to herein or which affect it or its duties or liabilities hereunder, unless or until requested to do so by any party to this Escrow Agreement and then only upon receiving full indemnity, in a character reasonably satisfactory to the Escrow Agent, against any and all claims, liabilities and expenses, including the reasonable attorneys fees, in relation thereto.



5.  **Compensation of Escrow Agent**  The Escrow Agent shall not charge or impose any fee for serving as the Escrow Agent hereunder or for performing the services set forth herein. The provisions of this Section shall survive the termination of this Escrow Agreement.

6.  **Resignation and Removal of Escrow Agent**  The Escrow Agent may resign at any time and for any reason upon notice to the Buyer, the Vendor and Cantwell given at least 30 days prior to the effective date of such resignation. The Escrow Agent may be removed by the mutual consent of the Buyer, the Vendor and Cantwell upon 30 days' prior written notice to it. If the Escrow Agent resigns or is removed and the Buyer, the Vendor and Cantwell fail to agree on a successor Escrow Agent within 20 days after receiving notice of such resignation or removal, the Buyer shall have the right to appoint a successor Escrow Agent, which shall be a commercial bank or trust company authorized to do business in the Commonwealth of Pennsylvania. Any successor Escrow Agent shall execute and deliver to the predecessor Escrow Agent, the Buyer, the Vendor and Cantwell an instrument accepting such appointment, and thereupon such successor Escrow Agent shall, without further act, become vested with all rights, powers and duties of the predecessor Escrow Agent as if originally named as the Escrow Agent and shall be bound by this Agreement. If a successor Escrow Agent has not been appointed within 30 days after any notice of resignation or removal, the Escrow Agent may deliver all of the cash and other property in its possession under this Escrow Agreement to any court of competent jurisdiction in the Commonwealth of Pennsylvania. Upon such delivery or upon the delivery of such cash and other property to any successor Escrow Agent appointed as provided above, the Escrow Agent shall be released from any and all liability under this Escrow Agreement, except to the extent of any prior willful misconduct, willful default or gross negligence of the Escrow Agent.

7.  **Liability of Escrow Agent; Expenses**

   (a)  In performing any of its duties under this Escrow Agreement, the Escrow Agent shall:

      (i)  not incur any liability to anyone for damages, losses or expenses, except for its own willful misconduct, willful default or negligence;

      (ii)  not incur any liability for any action that is taken or omitted in good faith upon advice of its counsel given in writing regarding any question relating to the duties and responsibilities of the Escrow Agent under this Escrow Agreement;

      (iii)  be entitled to deem (unless it has actual knowledge to the contrary) the signatories of any documents or instruments submitted to it pursuant to this Escrow Agreement as being those of persons authorized to sign such documents or instruments on behalf of the other parties to this Escrow Agreement and shall be entitled to rely upon the genuineness of the signatures of such signatories without inquiry and without requiring substantiating evidence of any kind;

      (iv)  be entitled to rely upon any judgment, certification, demand or other writing delivered to it hereunder without being required to determine the authenticity or the correctness of any facts stated therein, the propriety or validity of the service thereof, or the jurisdiction issuing any judgment;



(v)    have no liability for investment losses suffered by the Escrow Property so long as the investments were made in accordance with the terms of this Agreement; and

(vi)    have no duties or responsibilities except those expressly set forth herein.

(b)    If a dispute arises between any of the parties to this Escrow Agreement or if the Escrow Agent shall be uncertain as to its rights and duties under this Escrow Agreement, the Escrow Agent shall be entitled at its option to tender into the register or custody of any court of competent jurisdiction in or for the Commonwealth of Pennsylvania, all money or property in its hands under this Escrow Agreement and to begin such legal proceedings as it deems appropriate. After taking such actions, the Escrow Agent shall then be discharged from any further duties and liability under this Escrow Agreement except to the extent of any prior willful misconduct, willful default or gross negligence of the Escrow Agent. Any such legal action may be brought in any court in or for the Commonwealth of Pennsylvania that has the appropriate jurisdiction.

(c)    The Buyer, the Vendor and Cantwell hereby agree to indemnify, defend and hold harmless the Escrow Agent against, from and in respect of (i) any claim, damage or deficiency, of any type whatsoever, relating to this Escrow Agreement or arising out of or in any other manner stemming or resulting from its administration, in good faith, of the Escrow Property (other than the gross negligence, willful misconduct or willful default of the Escrow Agent), and (ii) all actions, suits, proceedings, claims, demands, assessments, judgments, costs and expenses (including, without limitation, reasonable legal fees incident to any conflicting claims by Cantwell or the Vendor and the Buyer or any claim against the Escrow Agent) incident to any of the foregoing. This indemnity shall survive the resignation or removal of the Escrow Agent and the termination of the trusts hereunder. Anything in this Agreement to the contrary notwithstanding, in no event shall the Escrow Agent be liable for special, indirect or consequential loss or damage of any kind whatsoever (including but not limited to lost profits), even if the Escrow Agent has been advised of the likelihood of such loss or damage and regardless of the form of action.

8.    **Parties in Interest; Assignment**  Subject to the following two sentences, this Escrow Agreement shall enure to the benefit of and be binding on the parties and their respective successors and permitted assigns. Except when expressly permitted by this Escrow Agreement, any assignment of this Escrow Agreement by any party without prior written consent of the other parties shall be void. Nothing in this Escrow Agreement is intended to confer any rights or remedies on anyone other than a party to this Escrow Agreement or the holder of a valid assignment of rights under this Escrow Agreement.



9.    **Governing Law** This Escrow Agreement shall be governed by and interpreted and enforced in accordance with the laws of the Commonwealth of Pennsylvania without regard to conflicts of laws principles of any jurisdiction. Each of the Buyer, the Vendor, Cantwell and the Escrow Agent irrevocably and unconditionally (a) agree that any suit, action or other legal proceeding (collectively, the "**Suit**") instituted by the Vendor or Cantwell and arising out of this Escrow Agreement shall be brought and adjudicated only in the Commonwealth of Pennsylvania, (b) agrees that any Suit instituted by the Buyer arising out of this Escrow Agreement shall be brought and adjudicated only in the Commonwealth of Pennsylvania, and (c) waive and agree not to assert by way of motion, as a defence or otherwise in any such Suit, any claim that it is not subject to the jurisdiction of the above courts, that such Suit is brought in an inconvenient forum or that the venue of such Suit is improper.

10.    **Amendments or Supplements to Escrow Agreement** This Escrow Agreement may not be amended or supplemented except by written instrument duly executed by each party.

11.    **Notices** Any notice, request, claim, demand, waiver, consent, approval or other communication which is required or permitted hereunder shall be in writing and shall be deemed given if delivered personally or sent by facsimile, as follows:

If to the Vendor, Cantwell or the Buyer, in accordance with the notice provisions (including required copies) set forth in the Purchase Agreement.

If to the Escrow Agent, to:

1235 Westlakes Drive, Suite 400
Berwyn, Pennsylvania
U.S.A.  19312
Attention: Cuyler Walker
Telecopier: (610) 640-7835
Telephone: (610) 640-7823

Such notice, request, claim, demand, waiver, consent, approval or other communication shall be deemed to have been given as of the date so delivered or facsimiled.

12.    **Counterparts; Telecopier Execution** This Escrow Agreement may be executed in any number of counterparts, each of which is an original, and all of which together shall be deemed to be one and the same instrument. Execution and delivery of counterparts of this Escrow Agreement by telecopier by any party shall be binding on all parties to this Escrow Agreement.

13.    **Other Documents**. The parties hereto agree to execute and deliver any and all documents and to take such further action as shall be reasonably required to effectuate the provisions of this Escrow Agreement.

14.    **Rights to Escrow Property**. None of the Buyer, the Vendor or Cantwell shall have any right, title or interest in or to the Escrow Property until (and then only to the extent that) the Escrow Property is distributed to the applicable party. The parties hereto intend that, in the event of the filing of any petition

GV: #138973 v5 (2z8d05!.WPD)                                    5

in bankruptcy by or against the Buyer, the Vendor or Cantwell, the bankruptcy estate of the Buyer, the Vendor or Cantwell, as the case may be, shall have no right, title or interest in or to the Escrow Property until (and then only to the extent that) the same is actually received by such party.

15.     The parties hereto understand and acknowledge that the Escrow Agent is legal counsel to the Vendor and Cantwell, and that said counsel may continue to act as such in the event of any dispute in connection with the Purchase Agreement, this Escrow Agreement or any other transaction contemplated therein or herein, subject to the obligations in Section 2 above.

**IN WITNESS WHEREOF** the parties have duly executed this Escrow Agreement on the date first written above.

**MULTI-GLASS INTERNATIONAL CORP.**

Per: _____

Name:   William G. Edwards
Title:    Vice-President, Finance          (c/s)

**REFRACTORY AND INSULATION SUPPLY CORP.**

Per: _____

Name:   Daniel Sonnelitter
Title:    President                              (c/s)

_____
**WITNESS**

_____
**JEFF CANTWELL**

**PEPPER HAMILTON LLP**

Per: _____

Name:
Title:    Partner

GV: #138973 v5 (2z8d05!.WPD)                    6

# Exhibit "C"

October *June* 12, 2001

**_Via_ Facsimile (610-640-7835) and Regular Mail**
Cuyler Walker, Esquire
Pepper Hamilton, LLP
1235 Westlakes Drive, Suite 400
Berwyn, PA 19312

Re:    **Holdback, Earn Out Escrow Agreement Made and Entered on the 17th Day of February, 2000, by and among Multi-Glass International Corp., Refractory and Insulation Supply Corp., Jeff Cantwell and Pepper Hamilton, LLP (the "Escrow Agreement")**

Dear Mr. Walker:

    We are writing to you pursuant to the terms of the Escrow Agreement that was entered into as part of the Asset Purchase Agreement made and entered into on the 17th day of February, 2000, by and among Multi-Glass International Corp., Refractory and Insulation Supply Corp. and Jeff Cantwell.

    In accordance with the terms and conditions of the Escrow Agreement, this letter shall and does serve as our instruction and demand to you that you cause Pepper Hamilton, LLP, to disburse and release all of the Escrow Property (as that term is defined in the Escrow Agreement) to Knauf Fiber Glass GmbH ("Knauf"). We, therefore, ask that you promptly forward a check made payable to "Knauf Fiber Glass GmbH" in the amount of the Escrow Property, and deliver it to Barry D. Kleban, Esquire, Adelman Lavine Gold and Levin, a Professional Corporation, 1900 Two Penn Center Plaza, Philadelphia, Pennsylvania, 19102.

    Very truly yours,

    REFRACTORY AND INSULATION SUPPLY CORP.

By:        _____
        Jeff Cantwell, President
        and

        _____
        Jeff Cantwell

cc:  Frederic J. Kinkler, Jr., Esquire




# ASSIGNMENT

For good and valuable consideration, the receipt and sufficiency of which consideration is hereby acknowledged, and with the intent to be legally bound, I hereby assign, transfer and convey to Knauf, its successors and assigns (collectively hereinafter "Knauf"), all of my rights, title and interest in, to and under the Holdback, Earn Out Escrow Agreement (the "Escrow Agreement") dated February 17, 2000, by and among Multi-Glass International Corp., Risco, Cantwell and Pepper Hamilton, LLP, including, without limitation, all of my rights, title, and interest in and to any and all sums of money now due or to become due to me under the Escrow Agreement, a copy of which Escrow Agreement is attached hereto as Exhibit "A", and I authorize Knauf to take all steps necessary to collect any and all sums of money due to it under the Escrow Agreement by virtue of this Assignment.

IN WITNESS WHEREOF I, Jeffrey Cantwell, have duly executed this Assignment on this _12th_ day of ~~June~~ *October*, 2001.

WITNESS

_Patricia K. Vittese_  By: _Jeffrey Cantwell_
Name:                        Jeffrey Cantwell
Address:

Sworn or affirmed to and acknowledged before me on this _12th_ day of _Oct._, 2001.

_Patricia K. Vittese_
Notary Public

PATRICIA K. VITTESE
NOTARY PUBLIC OF NEW JERSEY
My Commission Expires April 26, 2004

# Exhibit "A"



## HOLDBACK, EARN OUT ESCROW AGREEMENT

This Escrow Agreement (the "**Escrow Agreement**") is made and entered into on the _17TH_ day of February, 2000 among **MULTI-GLASS INTERNATIONAL CORP.** a *Delaware corporation* (the "**Buyer**"), a wholly-owned subsidiary of **MULTI-GLASS INTERNATIONAL INC.**, an Alberta corporation ("**Multi-Glass**"), **REFRACTORY AND INSULATION SUPPLY CORP.**, a New Jersey corporation (the "**Vendor**"), **JEFF CANTWELL**, an individual resident in New Jersey ("**Cantwell**") and **PEPPER HAMILTON LLP**, Pennsylvania attorneys for the Vendor and Cantwell (the "**Escrow Agent**").

## **BACKGROUND**

The Buyer, the Vendor and Cantwell are parties to an asset purchase agreement entered into on the _17TH_ day of February, 2000 (the "**Purchase Agreement**") providing for the purchase by the Buyer of certain *of the assets of the Vendor. Capitalized terms used herein shall have the same meanings as ascribed in* the Purchase Agreement unless otherwise defined herein. Pursuant to Exhibit 2.2 of the Purchase Agreement, on the Closing Date, the Buyer is required to deposit the sum of $150,000.00 (the "**Escrow Property**") with the Escrow Agent. *The Buyer, the Vendor and Cantwell agree that the Escrow Agent* shall hold the Escrow Property pursuant to the Purchase Agreement on and subject to the terms hereof. For greater certainty, the Escrow Property shall be comprised of the Holdback Amount and the Earn Out Amount.

## **TERMS AND CONDITIONS**

1.  **Escrow Agent Appointment and Acceptance**

    (a)    Subject to the provisions hereof, the Buyer, the Vendor and Cantwell hereby appoint the Escrow Agent as their agent and custodian to hold, invest and disburse the Escrow Property in accordance with the terms of this Escrow Agreement, and the Escrow Agent accepts such appointment, acknowledges receipt of the Escrow Property from the Buyer and agrees to hold and release the Escrow Property only in accordance with the terms hereof.

    (b)    Notwithstanding anything to the contrary set forth herein, the duties and obligations of *the Escrow Agent will be determined solely by this Escrow Agreement and any* subsequent amendments or supplemental instructions agreed to in writing as provided below. Except as otherwise expressly provided herein, the Escrow Agent shall not refer to, and shall not be bound by, the provisions of any other agreement.

    (c)    The Escrow Agent shall not in any way be bound or affected by any modification or cancellation of this Escrow Agreement unless notice thereof is jointly given, in writing, to the Escrow Agent by the Buyer, the Vendor and Cantwell. The obligations of the Escrow Agent shall not be modified unless the Escrow Agent has consented to the modification in writing, which consent shall not be unreasonably withheld.



(d)     Upon termination of this Escrow Agreement, the Escrow Agent may request from any and all of the parties hereto such additional assurances, certificates, satisfactions, releases and/or other documents as it may reasonably deem appropriate to evidence the termination of this Escrow Agreement.

2.      **Release from Escrow**  Except as may be otherwise provided in this Escrow Agreement, the Escrow Agent will release the Escrow Property only:

(a)     in accordance with the mutual written direction of the Buyer, the Vendor and Cantwell upon satisfaction of the provisions of Exhibit 2.2 of the Purchase Agreement, or

(b)     in accordance with the final and unappealable order or direction of a court of competent jurisdiction or applicable regulatory authority.

3.      **Termination**  This Escrow Agreement shall be terminated upon payment by the Escrow Agent, in accordance with the terms hereof, of the Escrow Property to the Vendor or the Buyer in accordance with Exhibit 2.2 of the Purchase Agreement, as the case may be.

4.      **Investment of Escrow Property**

(a)     The Escrow Agent shall invest and reinvest the Escrow Property in an interest-bearing account. The Escrow Agent shall have the right to liquidate any investments of Escrow Property to provide funds necessary to make required payments under this Agreement. The Escrow Property shall remain invested as provided herein until distributed and paid pursuant to the terms and conditions of this Escrow Agreement.

(b)     All investments of the Escrow Property shall be held by, or registered in the name of, the Escrow Agent or its nominee.

(c)     The Vendor shall be deemed to be the owner of the Escrow Property for tax purposes. Interest earned on the Escrow Property for each taxable period shall be deemed to be earned by the Vendor and shall be disbursed to the Vendor upon termination of this Escrow Agreement. The Vendor represents that its federal tax identification number is 22-2402929. All interest earned on the Escrow Property under this Escrow Agreement shall be reported by the Vendor to the Internal Revenue Service. The Escrow Agent shall have no responsibility for the payment of taxes arising from or related to the Escrow Property.

(d)     The Escrow Agent shall not be required to institute or defend any action involving any matters referred to herein or which affect it or its duties or liabilities hereunder, unless or until requested to do so by any party to this Escrow Agreement and then only upon receiving full indemnity, in a character reasonably satisfactory to the Escrow Agent, against any and all claims, liabilities and expenses, including the reasonable attorneys fees, in relation thereto.

5.    **Compensation of Escrow Agent**  The Escrow Agent shall not charge or impose any fee for serving as the Escrow Agent hereunder or for performing the services set forth herein.  The provisions of this Section shall survive the termination of this Escrow Agreement.

6.    **Resignation and Removal of Escrow Agent**  The Escrow Agent may resign at any time and for any reason upon notice to the Buyer, the Vendor and Cantwell given at least 30 days prior to the effective date of such resignation.  The Escrow Agent may be removed by the mutual consent of the Buyer, the Vendor and Cantwell upon 30 days' prior written notice to it.  If the Escrow Agent resigns or is removed and the Buyer, the Vendor and Cantwell fail to agree on a successor Escrow Agent within 20 days after receiving notice of such resignation or removal, the Buyer shall have the right to appoint a successor Escrow Agent, which shall be a commercial bank or trust company authorized to do business in the Commonwealth of Pennsylvania.  Any successor Escrow Agent shall execute and deliver to the predecessor Escrow Agent, the Buyer, the Vendor and Cantwell an instrument accepting such appointment, and thereupon such successor Escrow Agent shall, without further act, become vested with all rights, powers and duties of the predecessor Escrow Agent as if originally named as the Escrow Agent and shall be bound by this Agreement.  If a successor Escrow Agent has not been appointed within 30 days after any notice of resignation or removal, the Escrow Agent may deliver all of the cash and other property in its possession under this Escrow Agreement to any court of competent jurisdiction in the Commonwealth of Pennsylvania.  Upon such delivery or upon the delivery of such cash and other property to any successor Escrow Agent appointed as provided above, the Escrow Agent shall be released from any and all liability under this Escrow Agreement, except to the extent of any prior willful misconduct, willful default or gross negligence of the Escrow Agent.

7.    **Liability of Escrow Agent; Expenses**

(a)    In performing any of its duties under this Escrow Agreement, the Escrow Agent shall:

(i)    not incur any liability to anyone for damages, losses or expenses, except for its own willful misconduct, willful default or negligence;

(ii)    not incur any liability for any action that is taken or omitted in good faith upon advice of its counsel given in writing regarding any question relating to the duties and responsibilities of the Escrow Agent under this Escrow Agreement;

(iii)    be entitled to deem (unless it has actual knowledge to the contrary) the signatories of any documents or instruments submitted to it pursuant to this Escrow Agreement as being those of persons authorized to sign such documents or instruments on behalf of the other parties to this Escrow Agreement and shall be entitled to rely upon the genuineness of the signatures of such signatories without inquiry and without requiring substantiating evidence of any kind;

(iv)    be entitled to rely upon any judgment, certification, demand or other writing delivered to it hereunder without being required to determine the authenticity or the correctness of any facts stated therein, the propriety or validity of the service thereof, or the jurisdiction issuing any judgment;



     (v)    have no liability for investment losses suffered by the Escrow Property so long as the investments were made in accordance with the terms of this Agreement; and

     (vi)   have no duties or responsibilities except those expressly set forth herein.

  (b)    If a dispute arises between any of the parties to this Escrow Agreement or if the Escrow Agent shall be uncertain as to its rights and duties under this Escrow Agreement, the Escrow Agent shall be entitled at its option to tender into the register or custody of any court of competent jurisdiction in or for the Commonwealth of Pennsylvania, all money or property in its hands under this Escrow Agreement and to begin such legal proceedings as it deems appropriate. After taking such actions, the Escrow Agent shall then be discharged from any further duties and liability under this Escrow Agreement except to the extent of any prior willful misconduct, willful default or gross negligence of the Escrow Agent. Any such legal action may be brought in any court in or for the Commonwealth of Pennsylvania that has the appropriate jurisdiction.

  (c)    The Buyer, the Vendor and Cantwell hereby agree to indemnify, defend and hold harmless the Escrow Agent against, from and in respect of (i) any claim, damage or deficiency, of any type whatsoever, relating to this Escrow Agreement or arising out of or in any other manner stemming or resulting from its administration, in good faith, of the Escrow Property (other than the gross negligence, willful misconduct or willful default of the Escrow Agent), and (ii) all actions, suits, proceedings, claims, demands, assessments, judgments, costs and expenses (including, without limitation, reasonable legal fees incident to any conflicting claims by Cantwell or the Vendor or the Buyer or any claim against the Escrow Agent) incident to any of the foregoing. This indemnity shall survive the resignation or removal of the Escrow Agent and the termination of the trusts hereunder. Anything in this Agreement to the contrary notwithstanding, in no event shall the Escrow Agent be liable for special, indirect or consequential loss or damage of any kind whatsoever (including but not limited to lost profits), even if the Escrow Agent has been advised of the likelihood of such loss or damage and regardless of the form of action.

8.    **Parties in Interest; Assignment**  Subject to the following two sentences, this Escrow Agreement shall enure to the benefit of and be binding on the parties and their respective successors and permitted assigns. Except when expressly permitted by this Escrow Agreement, any assignment of this Escrow Agreement by any party without prior written consent of the other parties shall be void. Nothing in this Escrow Agreement is intended to confer any rights or remedies on anyone other than a party to this Escrow Agreement or the holder of a valid assignment of rights under this Escrow Agreement.



9.    **Governing Law**  This Escrow Agreement shall be governed by and interpreted and enforced in accordance with the laws of the Commonwealth of Pennsylvania without regard to conflicts of laws principles of any jurisdiction.  Each of the Buyer, the Vendor, Cantwell and the Escrow Agent irrevocably and unconditionally (a) agree that any suit, action or other legal proceeding (collectively, the "**Suit**") instituted by the Vendor or Cantwell and arising out of this Escrow Agreement shall be brought and adjudicated only in the Commonwealth of Pennsylvania, (b) agrees that any Suit instituted by the Buyer arising out of this Escrow Agreement shall be brought and adjudicated only in the Commonwealth of Pennsylvania, and (c) waive and agree not to assert by way of motion, as a defence or otherwise in any such Suit, any claim that it is not subject to the jurisdiction of the above courts, that such Suit is brought in an inconvenient forum or that the venue of such Suit is improper.

10.    **Amendments or Supplements to Escrow Agreement**  This Escrow Agreement may not be amended or supplemented except by written instrument duly executed by each party.

11.    **Notices**  Any notice, request, claim, demand, waiver, consent, approval or other communication which is required or permitted hereunder shall be in writing and shall be deemed given if delivered personally or sent by facsimile, as follows:

       If to the Vendor, Cantwell or the Buyer, in accordance with the notice provisions (including required copies) set forth in the Purchase Agreement.

       If to the Escrow Agent, to:

       1235 Westlakes Drive, Suite 400
       Berwyn, Pennsylvania
       U.S.A.  19312
       Attention: Cuyler Walker
       Telecopier: (610) 640-7835
       Telephone: (610) 640-7823

Such notice, request, claim, demand, waiver, consent, approval or other communication  shall be deemed to have been given as of the date so delivered or facsimiled.

12.    **Counterparts; Telecopier Execution**  This Escrow Agreement may be executed in any number of counterparts, each of which is an original, and all of which together shall be deemed to be one and the same instrument.  Execution and delivery of counterparts of this Escrow Agreement by telecopier by any party shall be binding on all parties to this Escrow Agreement.

13.    **Other Documents**.  The parties hereto agree to execute and deliver any and all documents and to take such further action as shall be reasonably required to effectuate the provisions of this Escrow Agreement.

14.    **Rights to Escrow Property**.  None of the Buyer, the Vendor or Cantwell shall have any right, title or interest in or to the Escrow Property until (and then only to the extent that) the Escrow Property is distributed to the applicable party.  The parties hereto intend that, in the event of the filing of any petition

in bankruptcy by or against the Buyer, the Vendor or Cantwell, the bankruptcy estate of the Buyer, the Vendor or Cantwell, as the case may be, shall have no right, title or interest in or to the Escrow Property until (and then only to the extent that) the same is actually received by such party.

15.    The parties hereto understand and acknowledge that the Escrow Agent is legal counsel to the Vendor and Cantwell, and that said counsel may continue to act as such in the event of any dispute in connection with the Purchase Agreement, this Escrow Agreement or any other transaction contemplated therein or herein, subject to the obligations in Section 2 above.

    **IN WITNESS WHEREOF** the parties have duly executed this Escrow Agreement on the date first written above.

                                    MULTI-GLASS INTERNATIONAL CORP.

                            Per:    _____
                                    Name:    William G. Edwards
                                    Title:    Vice-President, Finance            (c/s)

                                    REFRACTORY AND INSULATION SUPPLY CORP.

                            Per:    _____
                                    Name:    Daniel Sonnelitter
                                    Title:    President                            (c/s)

                                    _____
                            JEFF CANTWELL

                            PEPPER HAMILTON LLP

WITNESS                     Per:    _____
                                    Name:
                                    Title:    Partner

# Exhibit "F"

CURTIN & HEEFNER, LLP                    Attorneys for Plaintiff
By:    Douglas H. Riblet, Esquire
       Attorney I.D. No. 17648
       250 N. Pennsylvania Avenue
       Morrisville, PA 19067
       (215) 736-2521

| | | |
|---|---|---|
| MULTI-GLASS INTERNATIONAL CORP. | : | COURT OF COMMON PLEAS OF |
| 191 Attwell Drive, Unit 1 | : | OF BUCKS COUNTY |
| Etobicoke. ON M9W 5Z2, | : | PENNSYLVANIA |
|          Plaintiff | : | |
|    vs. | : | |
| | : | |
| REFRACTORY AND INSTALLATION | : | |
| SUPPLY CORP. | : | |
| 97 Wood Street, 2nd Fl. | : | |
| Bristol, PA 19007 | : | |
| | : | CIVIL ACTION - LAW |
| and | : | |
| | : | |
| JEFF CANTWELL | : | |
| 97 Wood Street, 2nd Fl. | : | NO. |
| Bristol, PA 19007 | : | |
|         Defendants | : | |

## COMPLAINT

1.     Plaintiff Multi-Glass International Corp., is a business corporation organized and existing under the laws of Delaware with an address as set forth in the caption.

2.     Defendant Refractory and Installation Supply Corp. ("RISCO"), is a business corporation organized and existing under the laws of the state of New Jersey with an address for service of process as set forth in the caption.

3.     Defendant Jeff Cantwell ("Cantwell") is the President of Defendant RISCO with an address for service of process as set forth in the caption.

152117/34139

4.    Pepper Hamilton, LLP is a limited liability professional partnership organized and existing under the laws of Pennsylvania with an address of 1235 West Lakes Drive, Berwyn, PA 19312.

## COUNT I

## BREACH OF CONTRACT

5.    On or about February 17, 2000, Multi-Glass, as buyer, entered into an "Asset Purchase Agreement" with defendant RISCO, as seller, for the purchase of certain assets of RISCO located at 97 Wood Street, 2nd Floor, Bristol, Bucks County, Pennsylvania. A true and correct copy of said Asset Purchase Agreement, without exhibits, is attached hereto as Exhibit A.

6.    Exhibit 2.2 to the Asset Purchase Agreement provided that certain amounts of the purchase price would be held in escrow by defendant Pepper Hamilton, LLP, to be paid to Multi-Glass or RISCO depending upon the extent to which Multi-Glass was able to collect receivables purchased from RISCO under the Asset Purchase Agreement and depending upon the extent to which Multi-Glass was able to achieve sales from the assets purchased. A true and correct copy of Exhibit 2.2 to the Asset Purchase Agreement is attached hereto as Exhibit B.

7.    Exhibit 2.2 states the following:

1.    **Payment of the Purchase Price** - The Purchase Price, net of the Assumed Liabilities, shall be paid as follows:

(a)    $758,782.36 shall be paid to PNC Bank, National Association in satisfaction of all amounts owed by the Vendor to PNC Bank, National Association and to induce PNC Bank, National Association, to release its security interest in the Assets.

(b)    $50,000.00 shall be deposited with the Vendor's legal counsel as collateral security for the validity and collection of the Purchased Receivables, any adjustments pursuant to Section 3.4(d) and any tax liability for outstanding sales tax to the Commonwealth of Pennsylvania (the "**Holdback Amount**"). The Holdback Amount shall be released to the Vendor upon satisfactory collection by the Buyer of the Purchased

Receivables and either (i) to the Commonwealth of Pennsylvania, to the extent of any unpaid sales tax liability of the Vendor or, (ii) to the Vendor, upon receipt by the Buyer from the Vendor of a satisfactory clearance certificate from the Commonwealth of Pennsylvania regarding sales tax, subject to the provisions Section 3.4(d).

(c)     $150,000.00 payable as directed by the Vendor.

2.     **Payment of the Earn Out Amount** - $100,000.00 shall be deposited with the Vendor's legal counsel (the "**Earn Out Amount**") and such Earn Out Amount shall be released within 60 days following the first anniversary date of the Closing Date on the following terms:

i.     in the event the Business has attained $3,600,000.00 in sales with a 23.3% gross margin on such sales for a gross margin of $838,800 (the "**Gross Margin Benchmark**") during the first year following the Closing, the full amount of the Earn Out Amount shall be released to the Vendor;

ii.     in the event the Business has attained 90% or greater of the Gross Margin Benchmark during the first year following the Closing, 75% of the Earn Out Amount shall be released to the Vendor and 25% of the Earn Out Amount shall be refunded and released to the Buyer; and

iii.     in the event the Business has not attained a minimum of 90% of the Gross Margin Benchmark during the first year following the Closing, the Earn Out Amount shall be refunded and released to the Buyer.

8.     Paragraph 3.4(f) of the Asset Purchase Agreement provides as follows with respect to the parties' obligations under paragraph 1(b) of Exhibit 2.2 to the Asset Purchase Agreement:

In the event any of the Purchased Receivables remain uncollected one hundred and eighty (180) days following the Effective Date, the Buyer may elect to recover the amount of any uncollected Purchased Receivables from the Holdback Amount (as defined and described on Exhibit 2.2 hereof). The Vendor acknowledges that the Holdback Amount shall be held until the earlier of:

(i)     six (6) months from the date of the Effective Date; or
(ii)     collection in full of the Purchase Receivables.

9.     On or about February 17th, the plaintiff and defendants entered into a "Holdback, Earn Out Escrow Agreement" to govern _inter alia_ the escrow account established pursuant to

Case 2:02-cv-04408-WY    Document 5-5    Filed 11/04/2002    Page 35 of 37

Exhibit 2.2 of the Asset Purchase Agreement. A true and correct copy of the Holdback, Earn Out Escrow Agreement is attached hereto as Exhibit C.

10. The "Effective Date" of the contract was February 16, 2000.

11. The Closing of the Asset Purchase Agreement occurred on February 17, 2000.

12. Six months have elapsed since the Effective Date of the Asset Purchase Agreement, and $39,013.47 of Purchased Receivables as defined under the Asset Purchase Agreement remained uncollected as of the expiration of six months from the Effective Date, and continue to remain uncollected.

13. Following purchase of RISCO's assets pursuant to the Asset Purchase Agreement, Multi-Glass continued the operations formerly conducted by RISCO at the same address of 97 Wood Street, 2nd Floor, Bristol, Bucks County, Pennsylvania, until Multi-Glass discontinued said operations on or about January 1, 2002.

14. Through the end of February 2001, i.e. one year after the Closing of the Asset Purchase Agreement, Multi-Glass achieved a gross margin of $516,445.00, which is substantially less than 90% of the Gross Margin Bench Mark of $838,800.00 set forth in paragraph 2 of Exhibit 2.2 of the Asset Purchase Agreement.

15. Pepper Hamilton, LLP was the recipient of, and is the custodian of, the $50,000.00 deposited as collateral security pursuant to paragraph 1 of Exhibit 2.2 to the Asset Purchase Agreement and the Holdback, Earn Out Escrow Agreement.

16. Pepper Hamilton, LLP was the recipient of, and is the custodian of, the $100,000.00 deposited as collateral security pursuant to paragraph 2 of Exhibit 2.2 of the Asset Purchase Agreement and the Holdback Earn Out Escrow Agreement.

17. Multi-Glass has complied with all of its obligations under the Asset Purchase Agreement, including Exhibit 2.2 thereto, and the Holdback Earn Out Escrow Agreement.

18.    All conditions precedent to Multi-Glass's right to recovery from the $150,000.00 deposit and all increases in value thereto ("Escrow Amount") have occurred.

19.    Despite Multi-Glass' demand, pursuant to paragraph 2(a) of the Holdback, Earn Out Escrow Agreement, as a result of defendants' refusal to release the Escrow Amount or any of it to Multi-Glass, and as confirmed by correspondence from counsel for Pepper Hamilton to counsel for the parties dated November 26, 2001, Pepper Hamilton has failed and refused to distribute the Escrow Amount, or any part thereof, to Multi-Glass. A true and correct copy of the November 26, 2001 correspondence from counsel for Pepper Hamilton is attached hereto as Exhibit D.

20.    The Escrow Amount has also been garnished by a judgment creditor of RISCO, Knauf Fiber Glass, GMBH, in the matter of <u>Knauf Fiber Glass, GMBH v. Refractory and Insulation Supply Corp. d/b/a RISCO</u>, No. 99-5741, now pending in the United States District Court for the Eastern District of Pennsylvania.

WHEREFORE, plaintiff Multi-Glass International Corp. demands judgment in its favor and against defendants in an amount in excess of $150,000.00, plus interest, attorneys fees, costs and such other and further relief as the Court may deem just.

<u>COUNT II</u>

<u>CONVERSION</u>

21.    Paragraphs 1 through 20 are incorporated herein by reference and realleged as though fully set forth at length.

22.    By its refusal to agree to direct that Pepper Hamilton pay the Escrow Amount to Multi-Glass, defendants RISCO and Cantwell have converted the property of Multi-Glass.

152117/34139

WHEREFORE, plaintiff Multi-Glass International Corp. demands judgment in its favor and against defendants in an amount in excess of $150,000.00, plus interest, attorney's fees, costs, and such other and further relief as the Court may deem just.

## COUNT III

### DECLARATORY RELIEF

23.    Paragraph 1 through 22 are incorporated by referenced and realleged as through fully set forth at length.

24.    Multi-Glass is entitled to declaratory relief stating that Multi-Glass has the right to payment of the Escrow Amount.

WHEREFORE, plaintiff Multi-Glass International Corporation demands a judgment declaring that it is entitled to payment of all or part of the Escrow Amount, plus interest, attorneys fees, costs and such other and further relief as the Court may deem just.

CURTIN & HEFFNER, LLP

By: _____

Douglas H. Riblet, Esquire
Attorneys for Plaintiff

152117/34139