## HOLDBACK, EARN OUT ESCROW AGREEMENT

This Escrow Agreement (the "**Escrow Agreement**") is made and entered into on the __17TH__ day of February, 2000 among **MULTI-GLASS INTERNATIONAL CORP.** a Delaware corporation (the "**Buyer**"), a wholly-owned subsidiary of **MULTI-GLASS INTERNATIONAL INC.**, an Alberta corporation ("**Multi-Glass**"), **REFRACTORY AND INSULATION SUPPLY CORP.**, a New Jersey corporation (the "**Vendor**"), **JEFF CANTWELL**, an individual resident in New Jersey ("**Cantwell**") and **PEPPER HAMILTON LLP**, Pennsylvania attorneys for the Vendor and Cantwell (the "**Escrow Agent**").

### BACKGROUND

The Buyer, the Vendor and Cantwell are parties to an asset purchase agreement entered into on the __17TH__ day of February, 2000 (the "**Purchase Agreement**") providing for the purchase by the Buyer of certain of the assets of the Vendor. Capitalized terms used herein shall have the same meanings as ascribed in the Purchase Agreement unless otherwise defined herein. Pursuant to Exhibit 2.2 of the Purchase Agreement, on the Closing Date, the Buyer is required to deposit the sum of $150,000.00 (the "**Escrow Property**") with the Escrow Agent. The Buyer, the Vendor and Cantwell agree that the Escrow Agent shall hold the Escrow Property pursuant to the Purchase Agreement on and subject to the terms hereof. For greater certainty, the Escrow Property shall be comprised of the Holdback Amount and the Earn Out Amount.

### TERMS AND CONDITIONS

1. **Escrow Agent Appointment and Acceptance**

    (a) Subject to the provisions hereof, the Buyer, the Vendor and Cantwell hereby appoint the Escrow Agent as their agent and custodian to hold, invest and disburse the Escrow Property in accordance with the terms of this Escrow Agreement, and the Escrow Agent accepts such appointment, acknowledges receipt of the Escrow Property from the Buyer and agrees to hold and release the Escrow Property only in accordance with the terms hereof.

    (b) Notwithstanding anything to the contrary set forth herein, the duties and obligations of the Escrow Agent will be determined solely by this Escrow Agreement and any subsequent amendments or supplemental instructions agreed to in writing as provided below. Except as otherwise expressly provided herein, the Escrow Agent shall not refer to, and shall not be bound by, the provisions of any other agreement.

    (c) The Escrow Agent shall not in any way be bound or affected by any modification or cancellation of this Escrow Agreement unless notice thereof is jointly given, in writing, to the Escrow Agent by the Buyer, the Vendor and Cantwell. The obligations of the Escrow Agent shall not be modified unless the Escrow Agent has consented to the modification in writing, which consent shall not be unreasonably withheld.

(d) Upon termination of this Escrow Agreement, the Escrow Agent may request from any and all of the parties hereto such additional assurances, certificates, satisfactions, releases and/or other documents as it may reasonably deem appropriate to evidence the termination of this Escrow Agreement.

2. **Release from Escrow** Except as may be otherwise provided in this Escrow Agreement, the Escrow Agent will release the Escrow Property only:

(a) in accordance with the mutual written direction of the Buyer, the Vendor and Cantwell upon satisfaction of the provisions of Exhibit 2.2 of the Purchase Agreement, or

(b) in accordance with the final and unappealable order or direction of a court of competent jurisdiction or applicable regulatory authority.

3. **Termination** This Escrow Agreement shall be terminated upon payment by the Escrow Agent, in accordance with the terms hereof, of the Escrow Property to the Vendor or the Buyer in accordance with Exhibit 2.2 of the Purchase Agreement, as the case may be.

4. **Investment of Escrow Property**

(a) The Escrow Agent shall invest and reinvest the Escrow Property in an interest-bearing account. The Escrow Agent shall have the right to liquidate any investments of Escrow Property to provide funds necessary to make required payments under this Agreement. The Escrow Property shall remain invested as provided herein until distributed and paid pursuant to the terms and conditions of this Escrow Agreement.

(b) All investments of the Escrow Property shall be held by, or registered in the name of, the Escrow Agent or its nominee.

(c) The Vendor shall be deemed to be the owner of the Escrow Property for tax purposes. Interest earned on the Escrow Property for each taxable period shall be deemed to be earned by the Vendor and shall be disbursed to the Vendor upon termination of this Escrow Agreement. The Vendor represents that its federal tax identification number is 22-2402929. All interest earned on the Escrow Property under this Escrow Agreement shall be reported by the Vendor to the Internal Revenue Service. The Escrow Agent shall have no responsibility for the payment of taxes arising from or related to the Escrow Property.

(d) The Escrow Agent shall not be required to institute or defend any action involving any matters referred to herein or which affect it or its duties or liabilities hereunder, unless or until requested to do so by any party to this Escrow Agreement and then only upon receiving full indemnity, in a character reasonably satisfactory to the Escrow Agent, against any and all claims, liabilities and expenses, including the reasonable attorneys fees, in relation thereto.

5. **Compensation of Escrow Agent** The Escrow Agent shall not charge or impose any fee for serving as the Escrow Agent hereunder or for performing the services set forth herein. The provisions of this Section shall survive the termination of this Escrow Agreement.

6. **Resignation and Removal of Escrow Agent** The Escrow Agent may resign at any time and for any reason upon notice to the Buyer, the Vendor and Cantwell given at least 30 days prior to the effective date of such resignation. The Escrow Agent may be removed by the mutual consent of the Buyer, the Vendor and Cantwell upon 30 days' prior written notice to it. If the Escrow Agent resigns or is removed and the Buyer, the Vendor and Cantwell fail to agree on a successor Escrow Agent within 20 days after receiving notice of such resignation or removal, the Buyer shall have the right to appoint a successor Escrow Agent, which shall be a commercial bank or trust company authorized to do business in the Commonwealth of Pennsylvania. Any successor Escrow Agent shall execute and deliver to the predecessor Escrow Agent, the Buyer, the Vendor and Cantwell an instrument accepting such appointment, and thereupon such successor Escrow Agent shall, without further act, become vested with all rights, powers and duties of the predecessor Escrow Agent as if originally named as the Escrow Agent and shall be bound by this Agreement. If a successor Escrow Agent has not been appointed within 30 days after any notice of resignation or removal, the Escrow Agent may deliver all of the cash and other property in its possession under this Escrow Agreement to any court of competent jurisdiction in the Commonwealth of Pennsylvania. Upon such delivery or upon the delivery of such cash and other property to any successor Escrow Agent appointed as provided above, the Escrow Agent shall be released from any and all liability under this Escrow Agreement, except to the extent of any prior willful misconduct, willful default or gross negligence of the Escrow Agent.

7. **Liability of Escrow Agent; Expenses**

    (a)  In performing any of its duties under this Escrow Agreement, the Escrow Agent shall:

    (i)  not incur any liability to anyone for damages, losses or expenses, except for its own willful misconduct, willful default or negligence;

    (ii) not incur any liability for any action that is taken or omitted in good faith upon advice of its counsel given in writing regarding any question relating to the duties and responsibilities of the Escrow Agent under this Escrow Agreement;

    (iii) be entitled to deem (unless it has actual knowledge to the contrary) the signatories of any documents or instruments submitted to it pursuant to this Escrow Agreement as being those of persons authorized to sign such documents or instruments on behalf of the other parties to this Escrow Agreement and shall be entitled to rely upon the genuineness of the signatures of such signatories without inquiry and without requiring substantiating evidence of any kind;

    (iv) be entitled to rely upon any judgment, certification, demand or other writing delivered to it hereunder without being required to determine the authenticity or the correctness of any facts stated therein, the propriety or validity of the service thereof, or the jurisdiction issuing any judgment;

      (v)    have no liability for investment losses suffered by the Escrow Property so long as the investments were made in accordance with the terms of this Agreement; and

      (vi)    have no duties or responsibilities except those expressly set forth herein.

(b)    If a dispute arises between any of the parties to this Escrow Agreement or if the Escrow Agent shall be uncertain as to its rights and duties under this Escrow Agreement, the Escrow Agent shall be entitled at its option to tender into the register or custody of any court of competent jurisdiction in or for the Commonwealth of Pennsylvania, all money or property in its hands under this Escrow Agreement and to begin such legal proceedings as it deems appropriate. After taking such actions, the Escrow Agent shall then be discharged from any further duties and liability under this Escrow Agreement except to the extent of any prior willful misconduct, willful default or gross negligence of the Escrow Agent. Any such legal action may be brought in any court in or for the Commonwealth of Pennsylvania that has the appropriate jurisdiction.

(c)    The Buyer, the Vendor and Cantwell hereby agree to indemnify, defend and hold harmless the Escrow Agent against, from and in respect of (i) any claim, damage or deficiency, of any type whatsoever, relating to this Escrow Agreement or arising out of or in any other manner stemming or resulting from its administration, in good faith, of the Escrow Property (other than the gross negligence, willful misconduct or willful default of the Escrow Agent), and (ii) all actions, suits, proceedings, claims, demands, assessments, judgments, costs and expenses (including, without limitation, reasonable legal fees incident to any conflicting claims by Cantwell or the Vendor and the Buyer or any claim against the Escrow Agent) incident to any of the foregoing. This indemnity shall survive the resignation or removal of the Escrow Agent and the termination of the trusts hereunder. Anything in this Agreement to the contrary notwithstanding, in no event shall the Escrow Agent be liable for special, indirect or consequential loss or damage of any kind whatsoever (including but not limited to lost profits), even if the Escrow Agent has been advised of the likelihood of such loss or damage and regardless of the form of action.

8.    **Parties in Interest; Assignment**  Subject to the following two sentences, this Escrow Agreement shall enure to the benefit of and be binding on the parties and their respective successors and permitted assigns. Except when expressly permitted by this Escrow Agreement, any assignment of this Escrow Agreement by any party without prior written consent of the other parties shall be void. Nothing in this Escrow Agreement is intended to confer any rights or remedies on anyone other than a party to this Escrow Agreement or the holder of a valid assignment of rights under this Escrow Agreement.

9.   **Governing Law**  This Escrow Agreement shall be governed by and interpreted and enforced in accordance with the laws of the Commonwealth of Pennsylvania without regard to conflicts of laws principles of any jurisdiction. Each of the Buyer, the Vendor, Cantwell and the Escrow Agent irrevocably and unconditionally (a) agree that any suit, action or other legal proceeding (collectively, the "**Suit**") instituted by the Vendor or Cantwell and arising out of this Escrow Agreement shall be brought and adjudicated only in the Commonwealth of Pennsylvania, (b) agrees that any Suit instituted by the Buyer arising out of this Escrow Agreement shall be brought and adjudicated only in the Commonwealth of Pennsylvania, and (c) waive and agree not to assert by way of motion, as a defence or otherwise in any such Suit, any claim that it is not subject to the jurisdiction of the above courts, that such Suit is brought in an inconvenient forum or that the venue of such Suit is improper.

10.   **Amendments or Supplements to Escrow Agreement**  This Escrow Agreement may not be amended or supplemented except by written instrument duly executed by each party.

11.   **Notices**  Any notice, request, claim, demand, waiver, consent, approval or other communication which is required or permitted hereunder shall be in writing and shall be deemed given if delivered personally or sent by facsimile, as follows:

> If to the Vendor, Cantwell or the Buyer, in accordance with the notice provisions (including required copies) set forth in the Purchase Agreement.
>
> If to the Escrow Agent, to:
>
> 1235 Westlakes Drive, Suite 400
> Berwyn, Pennsylvania
> U.S.A.  19312
> Attention: Cuyler Walker
> Telecopier: (610) 640-7835
> Telephone: (610) 640-7823

Such notice, request, claim, demand, waiver, consent, approval or other communication shall be deemed to have been given as of the date so delivered or facsimiled.

12.   **Counterparts; Telecopier Execution**  This Escrow Agreement may be executed in any number of counterparts, each of which is an original, and all of which together shall be deemed to be one and the same instrument. Execution and delivery of counterparts of this Escrow Agreement by telecopier by any party shall be binding on all parties to this Escrow Agreement.

13.   **Other Documents**.  The parties hereto agree to execute and deliver any and all documents and to take such further action as shall be reasonably required to effectuate the provisions of this Escrow Agreement.

14.   **Rights to Escrow Property**.  None of the Buyer, the Vendor or Cantwell shall have any right, title or interest in or to the Escrow Property until (and then only to the extent that) the Escrow Property is distributed to the applicable party. The parties hereto intend that, in the event of the filing of any petition

in bankruptcy by or against the Buyer, the Vendor or Cantwell, the bankruptcy estate of the Buyer, the Vendor or Cantwell, as the case may be, shall have no right, title or interest in or to the Escrow Property until (and then only to the extent that) the same is actually received by such party.

15. The parties hereto understand and acknowledge that the Escrow Agent is legal counsel to the Vendor and Cantwell, and that said counsel may continue to act as such in the event of any dispute in connection with the Purchase Agreement, this Escrow Agreement or any other transaction contemplated therein or herein, subject to the obligations in Section 2 above.

**IN WITNESS WHEREOF** the parties have duly executed this Escrow Agreement on the date first written above.

**MULTI-GLASS INTERNATIONAL CORP.**

Per: _____
Name:   William G. Edwards
Title:   Vice-President, Finance                (c/s)

**REFRACTORY AND INSULATION SUPPLY CORP.**

Per: _____
Name:   Daniel Sonnelitter
Title:   President                                       (c/s)

_____
JEFF CANTWELL

**PEPPER HAMILTON LLP**

Per: _____
Name:
Title:   Partner

_____
WITNESS