## SETTLEMENT AGREEMENT AND RELEASE

THIS SETTLEMENT AGREEMENT AND RELEASE (the "Agreement") is made on, entered into and effective as of this _12th_ day of ~~June,~~ _October_ 2001, by and among Knauf Fiber Glass GMBH ("Knauf"), a German business entity, Jeffrey Cantwell ("Cantwell"), an adult individual, and POS Termination, Inc. f/k/a Refractory and Insulation Supply Corp. d/b/a Risco, a New Jersey corporation ("Risco") (collectively referred to herein as the "Parties").

### RECITALS

WHEREAS, on or about November 17, 1999, Knauf filed a Complaint against Risco, which Complaint is captioned as <u>Knauf Fiber Glass GMBH v. Refractory and Insulation Supply Corp. d/b/a RISCO</u>, Civil Action No. 99-5741 (the "Underlying Action"), and which Complaint alleged that Knauf sold and delivered insulation related products to Risco for which Risco did not pay, despite demand for payment being made by Knauf; and

WHEREAS, a Stipulated Judgment (the "Stipulated Judgment") in favor of Knauf and against Risco in the amount of $788,746.13 (being the principal amount then due and owing by Risco to Knauf) was entered in the Underlying Action on February 24, 2000; and

WHEREAS, on or about February 17, 2000, Risco, unbeknownst to Knauf, entered into an Asset Purchase Agreement (the "Asset Purchase Agreement") with Multi-Glass International Corp. ("Multi-Glass") whereby the Risco agreed to, and did in fact, sell substantially all of its assets (the "Sale") to Multi-Glass for the sum of $1,062,115.00 (the "Purchase Price"); and

WHEREAS, as part of the Asset Purchase Agreement, the sum of $150,000.00 (the "Escrow Property") was deposited by Multi-Glass into an escrow account pursuant to a certain Holdback, Earn Out Escrow Agreement (the "Escrow Agreement") dated February 17, 2000, by and among Multi-Glass, Risco, Cantwell and Pepper Hamilton, LLP, as Escrow Agent (the "Escrow Agent"); and

WHEREAS, Cantwell is the sole shareholder of Risco; and

WHEREAS, Knauf has agreed to give a general release to Cantwell, and only to Cantwell, if Risco and Cantwell agree to assign to Knauf their respective rights, title and interest in, to and under the Escrow Agreement; and

WHEREAS, Knauf and Cantwell have agreed to settle all claims of any kind whatsoever which they ever had, have, or may have, against the other upon the terms and conditions set forth herein.

## TERMS AND CONDITIONS

NOW, THEREFORE, in consideration of the mutual promises, covenants and agreements contained herein, and expressly intending to be legally bound hereby, the Parties agree as follows:

1.    **Incorporation of Recitals**

All of the Recitals set forth hereinabove are incorporated herein by reference.

2.    **Release and Discharge**

Knauf hereby fully and completely releases and forever discharges Cantwell, and Cantwell hereby fully and completely releases and forever discharges Knauf, of and from any and all, past, present or future claims, demands, obligations, liabilities, actions, causes of action, rights, damages, costs, losses, and expenses of any kind and nature

whatsoever, whether based on tort, contract or other theory of recovery, in law or in equity, and whether for compensatory or punitive damages, which Knauf, on the one hand, and Cantwell, on the other hand, ever had, now have, or which he, it or they hereafter may have, against the other of them, for, on account of, related to, or arising out of, any matter, act, omission, commission or thing whatsoever, directly or indirectly, contingent or absolute, known or unknown, from the beginning of the world to the date hereof. This release shall be a fully binding and complete settlement between Knauf, on the one hand, and Cantwell, on the other hand, except only for the obligations contained in this Agreement. Nothing herein shall be construed as, and is not, a release by Knauf of any person or entity other than Cantwell.

3.     **Effect of Releases**

Knauf and Cantwell expressly waive and assume the risk of any and all claims or damages which may exist as of this date, or which may exist in the future, which they do know, or which they do not know or suspect to exist, or have reason to know or suspect to exist, whether through ignorance, oversight, error, negligence, or otherwise, and which, if known, would materially affect their decision to enter into this Agreement.

4.     **Agreement to Assign Rights Under Escrow Agreement**

Cantwell and Risco hereby agree to transfer and assign to Knauf, its successors and assigns, all of their rights, title and interest in, to and under the Escrow Agreement, including, but not limited to, their rights, title and interest in and to any and all sums of money now due or to become due to them, jointly and severally, under the Escrow Agreement.

5.    **Consent to Assign Escrow Agreement**

A.    Cantwell and Risco hereby represent and warrant that they, jointly and severally, ~~have used~~ will use their best efforts to obtain the written consent of Escrow Agent and Multi-Glass (collectively, the "Non-Assigning Parties") to permit Cantwell and Risco to assign their rights, title and interest in, to and under the Escrow Agreement, prior to their execution of this Agreement. Any breach of this representation and warranty by either Cantwell or Risco or both shall make the release given to Cantwell by Knauf herein null and void *ab initio.*

B.    If Cantwell and Risco have obtained the Non-Assigning Parties' written consent to the assignment described in Paragraph 5(A) herein prior to their execution of this Agreement, Cantwell and Risco shall, contemporaneously with their execution of this Agreement provide such written consents to counsel for Knauf and in addition, execute and deliver to counsel for Knauf at the address set forth in Paragraph 6(A) hereinbelow assignments of their respective rights, title and interest in, to and under the Escrow Agreement in the forms attached hereto as Exhibits "A" and "B", respectively.

C.    If Cantwell and Risco are unable to obtain the Non-Assigning Parties' written consent to the assignment described in Paragraph 5(A) herein prior to their executing this Agreement, Cantwell and Risco shall continue for seven (7) days from the date they execute this Agreement to use their best efforts to obtain the Non-Assigning Parties' written consent, after which seventh (7th) day both Cantwell and Risco shall provide such written consents, if obtained, and, in addition, execute and deliver to counsel for Knauf at the address set forth in Paragraph 6(A) hereinbelow assignments of

their respective rights, title and interest in, to and under the Escrow Agreement in the forms attached hereto as Exhibits "A" and "B", respectively.

6.    **Inability to Obtain Consent to Assign**

A.    Cantwell and Risco hereby agree to and shall draft and sign a letter in the form attached hereto as Exhibit "C", and shall return such letter to counsel for Knauf with this Agreement executed by each of them.  Whether or not Cantwell or Risco are able to obtain the written consents of Non-Assigning Parties pursuant to Paragraphs 5(B) or 5(C) herein, Cantwell and Risco, jointly and severally, shall and do authorize counsel for Knauf to cause the aforesaid letter to be delivered to the Escrow Agent anytime after seven (7) days from the date they execute this Agreement.

B.    In the event that the Escrow Agent is unwilling or unable to comply with the directions issued by Cantwell and Risco pursuant to Paragraph 6(A), or the Escrow Agent releases less than the full amount of the Escrow Property to Knauf, then Cantwell and Risco shall cooperate fully in any action or proceeding instituted by Knauf against either the Escrow Agent or Multi-Glass or both for the recovery of the full amount of the Escrow Property.

7.    **Refusal to Provide Written Direction**

Cantwell and Risco hereby represent and warrant that they, jointly and severally, have not provided, and will not provide, any direction, whether written, verbal or otherwise, to the Escrow Agent to release the Escrow Property to any person or entity, other than to Knauf.  Any breach of this representation and warranty by either Cantwell or Risco or both shall make the release given to Cantwell by Knauf herein null and void *ab initio.*

8.    **Attorneys' Fees and Costs**

Each of the Parties shall bear all of his, its and their own attorneys' fees, costs and expenses incurred in this matter, including, without limitation, the negotiation and preparation of this Agreement, the documents required by this Agreement and any and all matters related to this Agreement and any enforcement proceedings.

9.    **Voluntary Acceptance**

It is understood and agreed that the terms and consequences of this Agreement, including, without limitation, the releases contained herein, are knowingly, voluntarily and intelligently accepted and agreed upon by all of the Parties, and each of the Parties represents and warrants to the other of the Parties that he or it has independent counsel who has advised him or it concerning this Agreement and the consequences thereof, or has voluntarily waived his or its right to counsel.

10.    **Reservation of Rights and Cooperation by Cantwell**

Knauf hereby expressly reserves and preserves the right to assert any and all claims it may have against any person or entity, including, without limitation, those in connection with, arising out of or related to the Underlying Action, the Asset Purchase Agreement and/or the Escrow Agreement.  If Knauf asserts any such claims, Cantwell hereby agrees to and shall cooperate fully with Knauf in the prosecution of any and all such claims by making himself available from time to time as reasonably required by Knauf.  If Knauf determines, in its sole judgment, that Cantwell must be named as a plaintiff or claimant in any such claims, Cantwell hereby agrees to and shall consent to the use of his name as a plaintiff or claimant and shall sign any and all documents, including, without limitation, pleadings, discovery, affidavits, verifications, declarations,

agreements, releases or otherwise required by Knauf in the prosecution and resolution of such claims, provided Cantwell is given an opportunity to review all such documents and make revisions as necessary and appropriate to make the content of the documents true and correct to the best of his information and belief.

11.     **Entire Agreement, Effect and Survival**

This Agreement contains the entire understanding between the Parties with regard to the subject matter set forth herein, and it, and all of the terms and provisions contained in this Agreement shall be binding upon and inure to the benefit of each and all of the parties hereto, and each of their subsidiaries, affiliates, predecessors and successors in interest, heirs, executors and personal representatives, officers, directors, shareholders, owners, employees, agents, servants, attorneys, successors and assigns, past, present and future.  The Parties understand and acknowledge that there are no representations, warranties, promises, covenants, agreements or undertakings, oral or written, other than those expressly set forth herein.  This Agreement may not be amended, modified or rescinded except by an agreement in writing signed by all of the Parties.  The terms, provisions, obligations, covenants, representations, warranties and undertakings of the Parties shall and do survive the execution, delivery and performance of this Agreement.

12.     **Governing Laws**

This Agreement shall be construed, interpreted and enforced in accordance with the laws (excluding the conflicts of law) of the Commonwealth of Pennsylvania, where it has a *situs*.

13. **Additional Documents**

The Parties agree to cooperate fully and to execute any and all additional documents, and to take any and all further actions, which may be reasonably necessary or appropriate to carry out or give full force and effect to the terms of this Agreement.

14. **Headings**

The headings preceding the text of the paragraphs of this Agreement are inserted solely for convenience of reference and shall not constitute part of this Agreement.

15. **Invalidity or Unenforceability**

The invalidity or unenforceability of any provision, term, or condition of this Agreement shall not affect the validity or enforceability of any of the other provisions, terms and conditions of this Agreement.

16. **Authority**

Each of the undersigned individuals represents and warrants that he or she is authorized to execute and deliver this Agreement for himself or herself without the approval or consent of any other person or entity.

17. **Counterparts**

This Agreement may be signed in counterparts, all of which shall together constitute one and the same original Agreement. A facsimile signature shall have the same force and effect as an original signature.

IN WITNESS WHEREOF, the Parties have executed this Agreement as of the date first written above.

**WITNESS**

Name: _Patricia K Virtese_
Address:

Jeffrey Cantwell

**ATTEST**

By: _____
Name: _Patricia K Virtese_
Title:

**"RISCO"**

By: _____
Jeffrey Cantwell, President

**ATTEST**

By: _____
Name:
Title: _CORP. TAX ANALYST_

**"KNAUF"**

By: _____
Name:
Title: _SR. V.P. FINANCE_

Exhibit "A"

## ASSIGNMENT

For good and valuable consideration, the receipt and sufficiency of which consideration is hereby acknowledged, and with the intent to be legally bound, I hereby assign, transfer and convey to Knauf, its successors and assigns (collectively hereinafter "Knauf"), all of my rights, title and interest in, to and under the Holdback, Earn Out Escrow Agreement (the "Escrow Agreement") dated February 17, 2000, by and among Multi-Glass International Corp., Risco, Cantwell and Pepper Hamilton, LLP, including, without limitation, all of my rights, title, and interest in and to any and all sums of money now due or to become due to me under the Escrow Agreement, a copy of which Escrow Agreement is attached hereto as Exhibit "A", and I authorize Knauf to take all steps necessary to collect any and all sums of money due to it under the Escrow Agreement by virtue of this Assignment.

IN WITNESS WHEREOF I, Jeffrey Cantwell, have duly executed this Assignment on this _12th_ day of ~~June~~ October, 2001.

WITNESS

_Patricia K. Vittese_ By: _Jeffrey Cantwell_

Name:            Jeffrey Cantwell

Address:

Sworn or affirmed to and acknowledged before me on this _12th_ day of _Oct_, 2001.

_Patricia K. Vittese_

Notary Public

PATRICIA K. VITTESE
NOTARY PUBLIC OF NEW JERSEY
My Commission Expires April 26, 2004

**Exhibit "A"**

## HOLDBACK, EARN OUT ESCROW AGREEMENT

This Escrow Agreement (the "**Escrow Agreement**") is made and entered into on the _17TH_ day of February, 2000 among **MULTI-GLASS INTERNATIONAL CORP.** a Delaware corporation (the "**Buyer**"), a wholly-owned subsidiary of **MULTI-GLASS INTERNATIONAL INC.**, an Alberta corporation ("**Multi-Glass**"), **REFRACTORY AND INSULATION SUPPLY CORP.**, a New Jersey corporation (the "**Vendor**"), **JEFF CANTWELL**, an individual resident in New Jersey ("**Cantwell**") and **PEPPER HAMILTON LLP**, Pennsylvania attorneys for the Vendor and Cantwell (the "**Escrow Agent**").

## BACKGROUND

The Buyer, the Vendor and Cantwell are parties to an asset purchase agreement entered into on the _17TH_ day of February, 2000 (the "**Purchase Agreement**") providing for the purchase by the Buyer of certain of the assets of the Vendor. Capitalized terms used herein shall have the same meanings as ascribed in the Purchase Agreement unless otherwise defined herein. Pursuant to Exhibit 2.2 of the Purchase Agreement, on the Closing Date, the Buyer is required to deposit the sum of $150,000.00 (the "**Escrow Property**") with the Escrow Agent. The Buyer, the Vendor and Cantwell agree that the Escrow Agent shall hold the Escrow Property pursuant to the Purchase Agreement on and subject to the terms hereof. For greater certainty, the Escrow Property shall be comprised of the Holdback Amount and the Earn Out Amount.

## TERMS AND CONDITIONS

1. **Escrow Agent Appointment and Acceptance**

   (a)   Subject to the provisions hereof, the Buyer, the Vendor and Cantwell hereby appoint the Escrow Agent as their agent and custodian to hold, invest and disburse the Escrow Property in accordance with the terms of this Escrow Agreement, and the Escrow Agent accepts such appointment, acknowledges receipt of the Escrow Property from the Buyer and agrees to hold and release the Escrow Property only in accordance with the terms hereof.

   (b)   Notwithstanding anything to the contrary set forth herein, the duties and obligations of the Escrow Agent will be determined solely by this Escrow Agreement and any subsequent amendments or supplemental instructions agreed to in writing as provided below. Except as otherwise expressly provided herein, the Escrow Agent shall not refer to, and shall not be bound by, the provisions of any other agreement.

   (c)   The Escrow Agent shall not in any way be bound or affected by any modification or cancellation of this Escrow Agreement unless notice thereof is jointly given, in writing, to the Escrow Agent by the Buyer, the Vendor and Cantwell. The obligations of the Escrow Agent shall not be modified unless the Escrow Agent has consented to the modification in writing, which consent shall not be unreasonably withheld.

(d)    Upon termination of this Escrow Agreement, the Escrow Agent may request from any and all of the parties hereto such additional assurances, certificates, satisfactions, releases and/or other documents as it may reasonably deem appropriate to evidence the termination of this Escrow Agreement.

2.    **Release from Escrow**  Except as may be otherwise provided in this Escrow Agreement, the Escrow Agent will release the Escrow Property only:

(a)    in accordance with the mutual written direction of the Buyer, the Vendor and Cantwell upon satisfaction of the provisions of Exhibit 2.2 of the Purchase Agreement, or

(b)    in accordance with the final and unappealable order or direction of a court of competent jurisdiction or applicable regulatory authority.

3.    **Termination**  This Escrow Agreement shall be terminated upon payment by the Escrow Agent, in accordance with the terms hereof, of the Escrow Property to the Vendor or the Buyer in accordance with Exhibit 2.2 of the Purchase Agreement, as the case may be.

4.    **Investment of Escrow Property**

(a)    The Escrow Agent shall invest and reinvest the Escrow Property in an interest-bearing account. The Escrow Agent shall have the right to liquidate any investments of Escrow Property to provide funds necessary to make required payments under this Agreement. The Escrow Property shall remain invested as provided herein until distributed and paid pursuant to the terms and conditions of this Escrow Agreement.

(b)    All investments of the Escrow Property shall be held by, or registered in the name of, the Escrow Agent or its nominee.

(c)    The Vendor shall be deemed to be the owner of the Escrow Property for tax purposes. Interest earned on the Escrow Property for each taxable period shall be deemed to be earned by the Vendor and shall be disbursed to the Vendor upon termination of this Escrow Agreement. The Vendor represents that its federal tax identification number is 22-2402929. All interest earned on the Escrow Property under this Escrow Agreement shall be reported by the Vendor to the Internal Revenue Service. The Escrow Agent shall have no responsibility for the payment of taxes arising from or related to the Escrow Property.

(d)    The Escrow Agent shall not be required to institute or defend any action involving any matters referred to herein or which affect it or its duties or liabilities hereunder, unless or until requested to do so by any party to this Escrow Agreement and then only upon receiving full indemnity, in a character reasonably satisfactory to the Escrow Agent, against any and all claims, liabilities and expenses, including the reasonable attorneys fees, in relation thereto.

GV: #138973 v5 (2z8d05!.WPD)

5.    **Compensation of Escrow Agent**  The Escrow Agent shall not charge or impose any fee for serving as the Escrow Agent hereunder or for performing the services set forth herein.  The provisions of this Section shall survive the termination of this Escrow Agreement.

6.    **Resignation and Removal of Escrow Agent**  The Escrow Agent may resign at any time and for any reason upon notice to the Buyer, the Vendor and Cantwell given at least 30 days prior to the effective date of such resignation.  The Escrow Agent may be removed by the mutual consent of the Buyer, the Vendor and Cantwell upon 30 days' prior written notice to it.  If the Escrow Agent resigns or is removed and the Buyer, the Vendor and Cantwell fail to agree on a successor Escrow Agent within 20 days after receiving notice of such resignation or removal, the Buyer shall have the right to appoint a successor Escrow Agent, which shall be a commercial bank or trust company authorized to do business in the Commonwealth of Pennsylvania.  Any successor Escrow Agent shall execute and deliver to the predecessor Escrow Agent, the Buyer, the Vendor and Cantwell an instrument accepting such appointment, and thereupon such successor Escrow Agent shall, without further act, become vested with all rights, powers and duties of the predecessor Escrow Agent as if originally named as the Escrow Agent and shall be bound by this Agreement.  If a successor Escrow Agent has not been appointed within 30 days after any notice of resignation or removal, the Escrow Agent may deliver all of the cash and other property in its possession under this Escrow Agreement to any court of competent jurisdiction in the Commonwealth of Pennsylvania.  Upon such delivery or upon the delivery of such cash and other property to any successor Escrow Agent appointed as provided above, the Escrow Agent shall be released from any and all liability under this Escrow Agreement, except to the extent of any prior willful misconduct, willful default or gross negligence of the Escrow Agent.

7.    **Liability of Escrow Agent; Expenses**

(a)    In performing any of its duties under this Escrow Agreement, the Escrow Agent shall:

(i)    not incur any liability to anyone for damages, losses or expenses, except for its own willful misconduct, willful default or negligence;

(ii)    not incur any liability for any action that is taken or omitted in good faith upon advice of its counsel given in writing regarding any question relating to the duties and responsibilities of the Escrow Agent under this Escrow Agreement;

(iii)    be entitled to deem (unless it has actual knowledge to the contrary) the signatories of any documents or instruments submitted to it pursuant to this Escrow Agreement as being those of persons authorized to sign such documents or instruments on behalf of the other parties to this Escrow Agreement and shall be entitled to rely upon the genuineness of the signatures of such signatories without inquiry and without requiring substantiating evidence of any kind;

(iv)    be entitled to rely upon any judgment, certification, demand or other writing delivered to it hereunder without being required to determine the authenticity or the correctness of any facts stated therein, the propriety or validity of the service thereof, or the jurisdiction issuing any judgment;

     (v)      have no liability for investment losses suffered by the Escrow Property so long as the investments were made in accordance with the terms of this Agreement; and

     (vi)     have no duties or responsibilities except those expressly set forth herein.

(b)     If a dispute arises between any of the parties to this Escrow Agreement or if the Escrow Agent shall be uncertain as to its rights and duties under this Escrow Agreement, the Escrow Agent shall be entitled at its option to tender into the register or custody of any court of competent jurisdiction in or for the Commonwealth of Pennsylvania, all money or property in its hands under this Escrow Agreement and to begin such legal proceedings as it deems appropriate. After taking such actions, the Escrow Agent shall then be discharged from any further duties and liability under this Escrow Agreement except to the extent of any prior willful misconduct, willful default or gross negligence of the Escrow Agent. Any such legal action may be brought in any court in or for the Commonwealth of Pennsylvania that has the appropriate jurisdiction.

(c)     The Buyer, the Vendor and Cantwell hereby agree to indemnify, defend and hold harmless the Escrow Agent against, from and in respect of (i) any claim, damage or deficiency, of any type whatsoever, relating to this Escrow Agreement or arising out of or in any other manner stemming or resulting from its administration, in good faith, of the Escrow Property (other than the gross negligence, willful misconduct or willful default of the Escrow Agent), and (ii) all actions, suits, proceedings, claims, demands, assessments, judgments, costs and expenses (including, without limitation, reasonable legal fees incident to any conflicting claims by Cantwell or the Vendor and the Buyer or any claim against the Escrow Agent) incident to any of the foregoing. This indemnity shall survive the resignation or removal of the Escrow Agent and the termination of the trusts hereunder. Anything in this Agreement to the contrary notwithstanding, in no event shall the Escrow Agent be liable for special, indirect or consequential loss or damage of any kind whatsoever (including but not limited to lost profits), even if the Escrow Agent has been advised of the likelihood of such loss or damage and regardless of the form of action.

8.    **Parties in Interest; Assignment**  Subject to the following two sentences, this Escrow Agreement shall enure to the benefit of and be binding on the parties and their respective successors and permitted assigns. Except when expressly permitted by this Escrow Agreement, any assignment of this Escrow Agreement by any party without prior written consent of the other parties shall be void. Nothing in this Escrow Agreement is intended to confer any rights or remedies on anyone other than a party to this Escrow Agreement or the holder of a valid assignment of rights under this Escrow Agreement.

9.    **Governing Law**  This Escrow Agreement shall be governed by and interpreted and enforced in accordance with the laws of the Commonwealth of Pennsylvania without regard to conflicts of laws principles of any jurisdiction. Each of the Buyer, the Vendor, Cantwell and the Escrow Agent irrevocably and unconditionally (a) agree that any suit, action or other legal proceeding (collectively, the "**Suit**") instituted by the Vendor or Cantwell and arising out of this Escrow Agreement shall be brought and adjudicated only in the Commonwealth of Pennsylvania, (b) agrees that any Suit instituted by the Buyer arising out of this Escrow Agreement shall be brought and adjudicated only in the Commonwealth of Pennsylvania, and (c) waive and agree not to assert by way of motion, as a defence or otherwise in any such Suit, any claim that it is not subject to the jurisdiction of the above courts, that such Suit is brought in an inconvenient forum or that the venue of such Suit is improper.

10.    **Amendments or Supplements to Escrow Agreement**  This Escrow Agreement may not be amended or supplemented except by written instrument duly executed by each party.

11.    **Notices**  Any notice, request, claim, demand, waiver, consent, approval or other communication which is required or permitted hereunder shall be in writing and shall be deemed given if delivered personally or sent by facsimile, as follows:

If to the Vendor, Cantwell or the Buyer, in accordance with the notice provisions (including required copies) set forth in the Purchase Agreement.

If to the Escrow Agent, to:

1235 Westlakes Drive, Suite 400
Berwyn, Pennsylvania
U.S.A.  19312
Attention:  Cuyler Walker
Telecopier:  (610) 640-7835
Telephone:  (610) 640-7823

Such notice, request, claim, demand, waiver, consent, approval or other communication  shall be deemed to have been given as of the date so delivered or facsimiled.

12.    **Counterparts; Telecopier Execution**  This Escrow Agreement may be executed in any number of counterparts, each of which is an original, and all of which together shall be deemed to be one and the same instrument. Execution and delivery of counterparts of this Escrow Agreement by telecopier by any party shall be binding on all parties to this Escrow Agreement.

13.    **Other Documents**.  The parties hereto agree to execute and deliver any and all documents and to take such further action as shall be reasonably required to effectuate the provisions of this Escrow Agreement.

14.    **Rights to Escrow Property**.  None of the Buyer, the Vendor or Cantwell shall have any right, title or interest in or to the Escrow Property until (and then only to the extent that) the Escrow Property is distributed to the applicable party. The parties hereto intend that, in the event of the filing of any petition

GV: #138973 v5 (2z8d05!.WPD)

in bankruptcy by or against the Buyer, the Vendor or Cantwell, the bankruptcy estate of the Buyer, the Vendor or Cantwell, as the case may be, shall have no right, title or interest in or to the Escrow Property until (and then only to the extent that) the same is actually received by such party.

15.    The parties hereto understand and acknowledge that the Escrow Agent is legal counsel to the Vendor and Cantwell, and that said counsel may continue to act as such in the event of any dispute in connection with the Purchase Agreement, this Escrow Agreement or any other transaction contemplated therein or herein, subject to the obligations in Section 2 above.

    **IN WITNESS WHEREOF** the parties have duly executed this Escrow Agreement on the date first written above.

**MULTI-GLASS INTERNATIONAL CORP.**

Per: _____
    Name:  William G. Edwards
    Title:    Vice-President, Finance                    (c/s)

**REFRACTORY AND INSULATION SUPPLY CORP.**

Per: _____
    Name:  Daniel Sonnelitter
    Title:   President                                          (c/s)

_____
**WITNESS**

_____
**JEFF CANTWELL**

**PEPPER HAMILTON LLP**

Per: _____
    Name:
    Title:   Partner

# Exhibit "B"

# ASSIGNMENT

For good and valuable consideration, the receipt and sufficiency of which consideration is hereby acknowledged, and with the intent to be legally bound, POS Termination, Inc. f/k/a Refractory and Insulation Supply Corp. d/b/a Risco ("Risco"), by and through its undersigned officer, hereby assigns, transfers and conveys to Knauf, its successors and assigns (collectively hereinafter "Knauf" ), all of its rights, title and interest in, to and under the Holdback, Earn Out Escrow Agreement (the "Escrow Agreement") dated February 17, 2000, by and among Multi-Glass International Corp., Risco, Cantwell and Pepper Hamilton, LLP, including, without limitation, all of its rights, title, and interest in and to any and all sums of money now due or to become due to it under the Escrow Agreement, a copy of which Escrow Agreement is attached hereto as Exhibit "A", and Knauf is hereby authorized to take all steps necessary to collect any and all sums of money due to it under the Escrow Agreement by virtue of this Assignment.

IN WITNESS WHEREOF, the undersigned officer, being authorized by Risco to do so, has duly executed this Assignment on behalf of Risco on this _24th_ day of ~~June~~ October, 2001.

ATTEST                                    "RISCO"

By: _____    By: _____
    Name:                        Jeffrey Cantwell, President
    Title:

Sworn or affirmed to and
acknowledged before me on
this _24th_ day of _Oct_, 2001.

_____
Notary Public

PATRICIA K. VITTESE
NOTARY PUBLIC OF NEW JERSEY
My Commission Expires April 26, 2004

Exhibit "A"

## HOLDBACK, EARN OUT ESCROW AGREEMENT

This Escrow Agreement (the "**Escrow Agreement**") is made and entered into on the ___17TH___ day of February, 2000 among **MULTI-GLASS INTERNATIONAL CORP.** a Delaware corporation (the "**Buyer**"), a wholly-owned subsidiary of **MULTI-GLASS INTERNATIONAL INC.**, an Alberta corporation ("**Multi-Glass**"), **REFRACTORY AND INSULATION SUPPLY CORP.**, a New Jersey corporation (the "**Vendor**"), **JEFF CANTWELL**, an individual resident in New Jersey ("**Cantwell**") and **PEPPER HAMILTON LLP**, Pennsylvania attorneys for the Vendor and Cantwell (the "**Escrow Agent**").

### BACKGROUND

The Buyer, the Vendor and Cantwell are parties to an asset purchase agreement entered into on the ___17TH___ day of February, 2000 (the "**Purchase Agreement**") providing for the purchase by the Buyer of certain of the assets of the Vendor. Capitalized terms used herein shall have the same meanings as ascribed in the Purchase Agreement unless otherwise defined herein. Pursuant to Exhibit 2.2 of the Purchase Agreement, on the Closing Date, the Buyer is required to deposit the sum of $150,000.00 (the "**Escrow Property**") with the Escrow Agent. The Buyer, the Vendor and Cantwell agree that the Escrow Agent shall hold the Escrow Property pursuant to the Purchase Agreement on and subject to the terms hereof. For greater certainty, the Escrow Property shall be comprised of the Holdback Amount and the Earn Out Amount.

### TERMS AND CONDITIONS

1.  **Escrow Agent Appointment and Acceptance**

    (a)     Subject to the provisions hereof, the Buyer, the Vendor and Cantwell hereby appoint the Escrow Agent as their agent and custodian to hold, invest and disburse the Escrow Property in accordance with the terms of this Escrow Agreement, and the Escrow Agent accepts such appointment, acknowledges receipt of the Escrow Property from the Buyer and agrees to hold and release the Escrow Property only in accordance with the terms hereof.

    (b)     Notwithstanding anything to the contrary set forth herein, the duties and obligations of the Escrow Agent will be determined solely by this Escrow Agreement and any subsequent amendments or supplemental instructions agreed to in writing as provided below. Except as otherwise expressly provided herein, the Escrow Agent shall not refer to, and shall not be bound by, the provisions of any other agreement.

    (c)     The Escrow Agent shall not in any way be bound or affected by any modification or cancellation of this Escrow Agreement unless notice thereof is jointly given, in writing, to the Escrow Agent by the Buyer, the Vendor and Cantwell. The obligations of the Escrow Agent shall not be modified unless the Escrow Agent has consented to the modification in writing, which consent shall not be unreasonably withheld.

(d)    Upon termination of this Escrow Agreement, the Escrow Agent may request from any and all of the parties hereto such additional assurances, certificates, satisfactions, releases and/or other documents as it may reasonably deem appropriate to evidence the termination of this Escrow Agreement.

2.   **Release from Escrow**  Except as may be otherwise provided in this Escrow Agreement, the Escrow Agent will release the Escrow Property only:

(a)    in accordance with the mutual written direction of the Buyer, the Vendor and Cantwell upon satisfaction of the provisions of Exhibit 2.2 of the Purchase Agreement, or

(b)    in accordance with the final and unappealable order or direction of a court of competent jurisdiction or applicable regulatory authority.

3.   **Termination**  This Escrow Agreement shall be terminated upon payment by the Escrow Agent, in accordance with the terms hereof, of the Escrow Property to the Vendor or the Buyer in accordance with Exhibit 2.2 of the Purchase Agreement, as the case may be.

4.   **Investment of Escrow Property**

(a)    The Escrow Agent shall invest and reinvest the Escrow Property in an interest-bearing account. The Escrow Agent shall have the right to liquidate any investments of Escrow Property to provide funds necessary to make required payments under this Agreement. The Escrow Property shall remain invested as provided herein until distributed and paid pursuant to the terms and conditions of this Escrow Agreement.

(b)    All investments of the Escrow Property shall be held by, or registered in the name of, the Escrow Agent or its nominee.

(c)    The Vendor shall be deemed to be the owner of the Escrow Property for tax purposes. Interest earned on the Escrow Property for each taxable period shall be deemed to be earned by the Vendor and shall be disbursed to the Vendor upon termination of this Escrow Agreement. The Vendor represents that its federal tax identification number is 22-2402929. All interest earned on the Escrow Property under this Escrow Agreement shall be reported by the Vendor to the Internal Revenue Service. The Escrow Agent shall have no responsibility for the payment of taxes arising from or related to the Escrow Property.

(d)    The Escrow Agent shall not be required to institute or defend any action involving any matters referred to herein or which affect it or its duties or liabilities hereunder, unless or until requested to do so by any party to this Escrow Agreement and then only upon receiving full indemnity, in a character reasonably satisfactory to the Escrow Agent, against any and all claims, liabilities and expenses, including the reasonable attorneys fees, in relation thereto.

5.    **Compensation of Escrow Agent**  The Escrow Agent shall not charge or impose any fee for serving as the Escrow Agent hereunder or for performing the services set forth herein.  The provisions of this Section shall survive the termination of this Escrow Agreement.

6.    **Resignation and Removal of Escrow Agent**  The Escrow Agent may resign at any time and for any reason upon notice to the Buyer, the Vendor and Cantwell given at least 30 days prior to the effective date of such resignation.  The Escrow Agent may be removed by the mutual consent of the Buyer, the Vendor and Cantwell upon 30 days' prior written notice to it.  If the Escrow Agent resigns or is removed and the Buyer, the Vendor and Cantwell fail to agree on a successor Escrow Agent within 20 days after receiving notice of such resignation or removal, the Buyer shall have the right to appoint a successor Escrow Agent, which shall be a commercial bank or trust company authorized to do business in the Commonwealth of Pennsylvania.  Any successor Escrow Agent shall execute and deliver to the predecessor Escrow Agent, the Buyer, the Vendor and Cantwell an instrument accepting such appointment, and thereupon such successor Escrow Agent shall, without further act, become vested with all rights, powers and duties of the predecessor Escrow Agent as if originally named as the Escrow Agent and shall be bound by this Agreement.  If a successor Escrow Agent has not been appointed within 30 days after any notice of resignation or removal, the Escrow Agent may deliver all of the cash and other property in its possession under this Escrow Agreement to any court of competent jurisdiction in the Commonwealth of Pennsylvania.  Upon such delivery or upon the delivery of such cash and other property to any successor Escrow Agent appointed as provided above, the Escrow Agent shall be released from any and all liability under this Escrow Agreement, except to the extent of any prior willful misconduct, willful default or gross negligence of the Escrow Agent.

7.    **Liability of Escrow Agent; Expenses**

    (a)    In performing any of its duties under this Escrow Agreement, the Escrow Agent shall:

        (i)    not incur any liability to anyone for damages, losses or expenses, except for its own willful misconduct, willful default or negligence;

        (ii)    not incur any liability for any action that is taken or omitted in good faith upon advice of its counsel given in writing regarding any question relating to the duties and responsibilities of the Escrow Agent under this Escrow Agreement;

        (iii)    be entitled to deem (unless it has actual knowledge to the contrary) the signatories of any documents or instruments submitted to it pursuant to this Escrow Agreement as being those of persons authorized to sign such documents or instruments on behalf of the other parties to this Escrow Agreement and shall be entitled to rely upon the genuineness of the signatures of such signatories without inquiry and without requiring substantiating evidence of any kind;

        (iv)    be entitled to rely upon any judgment, certification, demand or other writing delivered to it hereunder without being required to determine the authenticity or the correctness of any facts stated therein, the propriety or validity of the service thereof, or the jurisdiction issuing any judgment;

     (v)    have no liability for investment losses suffered by the Escrow Property so long as the investments were made in accordance with the terms of this Agreement; and

     (vi)    have no duties or responsibilities except those expressly set forth herein.

(b)    If a dispute arises between any of the parties to this Escrow Agreement or if the Escrow Agent shall be uncertain as to its rights and duties under this Escrow Agreement, the Escrow Agent shall be entitled at its option to tender into the register or custody of any court of competent jurisdiction in or for the Commonwealth of Pennsylvania, all money or property in its hands under this Escrow Agreement and to begin such legal proceedings as it deems appropriate. After taking such actions, the Escrow Agent shall then be discharged from any further duties and liability under this Escrow Agreement except to the extent of any prior willful misconduct, willful default or gross negligence of the Escrow Agent. Any such legal action may be brought in any court in or for the Commonwealth of Pennsylvania that has the appropriate jurisdiction.

(c)    The Buyer, the Vendor and Cantwell hereby agree to indemnify, defend and hold harmless the Escrow Agent against, from and in respect of (i) any claim, damage or deficiency, of any type whatsoever, relating to this Escrow Agreement or arising out of or in any other manner stemming or resulting from its administration, in good faith, of the Escrow Property (other than the gross negligence, willful misconduct or willful default of the Escrow Agent), and (ii) all actions, suits, proceedings, claims, demands, assessments, judgments, costs and expenses (including, without limitation, reasonable legal fees incident to any conflicting claims by Cantwell or the Vendor and the Buyer or any claim against the Escrow Agent) incident to any of the foregoing. This indemnity shall survive the resignation or removal of the Escrow Agent and the termination of the trusts hereunder. Anything in this Agreement to the contrary notwithstanding, in no event shall the Escrow Agent be liable for special, indirect or consequential loss or damage of any kind whatsoever (including but not limited to lost profits), even if the Escrow Agent has been advised of the likelihood of such loss or damage and regardless of the form of action.

8.    **Parties in Interest; Assignment**  Subject to the following two sentences, this Escrow Agreement shall enure to the benefit of and be binding on the parties and their respective successors and permitted assigns. Except when expressly permitted by this Escrow Agreement, any assignment of this Escrow Agreement by any party without prior written consent of the other parties shall be void. Nothing in this Escrow Agreement is intended to confer any rights or remedies on anyone other than a party to this Escrow Agreement or the holder of a valid assignment of rights under this Escrow Agreement.

9.    <u>Governing Law</u>  This Escrow Agreement shall be governed by and interpreted and enforced in accordance with the laws of the Commonwealth of Pennsylvania without regard to conflicts of laws principles of any jurisdiction.  Each of the Buyer, the Vendor, Cantwell and the Escrow Agent irrevocably and unconditionally (a) agree that any suit, action or other legal proceeding (collectively, the "**Suit**") instituted by the Vendor or Cantwell and arising out of this Escrow Agreement shall be brought and adjudicated only in the Commonwealth of Pennsylvania, (b) agrees that any Suit instituted by the Buyer arising out of this Escrow Agreement shall be brought and adjudicated only in the Commonwealth of Pennsylvania, and (c) waive and agree not to assert by way of motion, as a defence or otherwise in any such Suit, any claim that it is not subject to the jurisdiction of the above courts, that such Suit is brought in an inconvenient forum or that the venue of such Suit is improper.

10.    <u>Amendments or Supplements to Escrow Agreement</u>  This Escrow Agreement may not be amended or supplemented except by written instrument duly executed by each party.

11.    <u>Notices</u>  Any notice, request, claim, demand, waiver, consent, approval or other communication which is required or permitted hereunder shall be in writing and shall be deemed given if delivered personally or sent by facsimile, as follows:

If to the Vendor, Cantwell or the Buyer, in accordance with the notice provisions (including required copies) set forth in the Purchase Agreement.

If to the Escrow Agent, to:

1235 Westlakes Drive, Suite 400
Berwyn, Pennsylvania
U.S.A.  19312
Attention:  Cuyler Walker
Telecopier:  (610) 640-7835
Telephone:  (610) 640-7823

Such notice, request, claim, demand, waiver, consent, approval or other communication  shall be deemed to have been given as of the date so delivered or facsimiled.

12.    <u>Counterparts; Telecopier Execution</u>  This Escrow Agreement may be executed in any number of counterparts, each of which is an original, and all of which together shall be deemed to be one and the same instrument.  Execution and delivery of counterparts of this Escrow Agreement by telecopier by any party shall be binding on all parties to this Escrow Agreement.

13.    <u>Other Documents</u>.  The parties hereto agree to execute and deliver any and all documents and to take such further action as shall be reasonably required to effectuate the provisions of this Escrow Agreement.

14.    <u>Rights to Escrow Property</u>.  None of the Buyer, the Vendor or Cantwell shall have any right, title or interest in or to the Escrow Property until (and then only to the extent that) the Escrow Property is distributed to the applicable party.  The parties hereto intend that, in the event of the filing of any petition

in bankruptcy by or against the Buyer, the Vendor or Cantwell, the bankruptcy estate of the Buyer, the Vendor or Cantwell, as the case may be, shall have no right, title or interest in or to the Escrow Property until (and then only to the extent that) the same is actually received by such party.

15.     The parties hereto understand and acknowledge that the Escrow Agent is legal counsel to the Vendor and Cantwell, and that said counsel may continue to act as such in the event of any dispute in connection with the Purchase Agreement, this Escrow Agreement or any other transaction contemplated therein or herein, subject to the obligations in Section 2 above.

**IN WITNESS WHEREOF** the parties have duly executed this Escrow Agreement on the date first written above.

**MULTI-GLASS INTERNATIONAL CORP.**

Per:
Name:    William G. Edwards
Title:    Vice-President, Finance          (c/s)

**REFRACTORY AND INSULATION SUPPLY CORP.**

Per:
Name:    Daniel Sonnelitter
Title:    President          (c/s)

**WITNESS**

**JEFF CANTWELL**

**PEPPER HAMILTON LLP**

Per:
Name:
Title:    Partner

GV: #138973 v5 (2z8d05!.WPD)                          6

# Exhibit "C"

*October 1?*, 2001

<u>*Via* Facsimile (610-640-7835) and Regular Mail</u>
Cuyler Walker, Esquire
Pepper Hamilton, LLP
1235 Westlakes Drive, Suite 400
Berwyn, PA 19312

Re:    Holdback, Earn Out Escrow Agreement Made and Entered on the 17th Day
of February, 2000, by and among Multi-Glass International Corp.,
Refractory and Insulation Supply Corp., Jeff Cantwell and Pepper
Hamilton, LLP (the "Escrow Agreement")

Dear Mr. Walker:

We are writing to you pursuant to the terms of the Escrow Agreement that was entered into as part of the Asset Purchase Agreement made and entered into on the 17th day of February, 2000, by and among Multi-Glass International Corp., Refractory and Insulation Supply Corp. and Jeff Cantwell.

In accordance with the terms and conditions of the Escrow Agreement, this letter shall and does serve as our instruction and demand to you that you cause Pepper Hamilton, LLP, to disburse and release all of the Escrow Property (as that term is defined in the Escrow Agreement) to Knauf Fiber Glass GmbH ("Knauf"). We, therefore, ask that you promptly forward a check made payable to "Knauf Fiber Glass GmbH" in the amount of the Escrow Property, and deliver it to Barry D. Kleban, Esquire, Adelman Lavine Gold and Levin, a Professional Corporation, 1900 Two Penn Center Plaza, Philadelphia, Pennsylvania, 19102.

Very truly yours,

REFRACTORY AND INSULATION SUPPLY CORP.

By:  _____
     Jeff Cantwell, President

     and

     _____
     Jeff Cantwell

cc:  Frederic J. Kinkler, Jr., Esquire